The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 23, 2020

## 2020COA11

**No. 18CA2342, *Marriage of Wright* — Family Law — Dissolution — Spousal Maintenance**

A division of the court of appeals discusses the specific findings a district court must make when determining a maintenance award and concludes that a district court errs by failing to follow the detailed procedure set forth in section 14-10-114, C.R.S. 2019.

COLORADO COURT OF APPEALS      **2020COA11**

Court of Appeals No. 18CA2342
El Paso County District Court No. 18DR2009
Honorable Theresa M. Cisneros, Judge

In re the Marriage of

Wayne Marcus Wright, Jr.,

Appellant,

and

Karen Cadine Wright,

Appellee.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
J. Jones and Fox, JJ., concur

Announced January 23, 2020

Gwendolyn M. Lawson, Colorado Springs, Colorado, for Appellant

McKinney & Associates P.C., Nathan D. McKinney, Erin Gardner, Amanda C.
Musselwhite, Austin G. Jackson, Colorado Springs, Colorado, for Appellee

¶ 1     Wayne Marcus Wright, Jr. (husband), appeals from the property division, maintenance award, and an attorney fees sanction entered in connection with the dissolution of his marriage to Karen Cadine Wright (wife). We affirm in part, reverse in part, and remand for further proceedings. In doing so, we hold that a district court errs when it fails to make specific findings to support its maintenance award, and we set forth in detail the step-by-step procedure the district court must follow when determining maintenance.

## I.     Property Division

¶ 2     Husband contends that the property division is inequitable, arguing that the court (1) failed to value the personal property; (2) failed to include wife's Jamaican property as part of the marital estate; and (3) ordered him to pay more of the marital debts. We perceive no abuse of discretion in the property division. *See In re Marriage of Powell*, 220 P.3d 952, 954 (Colo. App. 2009).

## A.     Applicable Law

¶ 3     The district court shall divide the marital property in such proportions as it deems just. § 14-10-113(1), C.R.S. 2019. The property division must be equitable, but not necessarily equal. *In re*

*Marriage of Antuna*, 8 P.3d 589, 594 (Colo. App. 2000). And an equitable division depends on the facts and circumstances of each case. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001). "The key to an equitable distribution is fairness, not mathematical precision." *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988).

### B.  Analysis

#### 1.  Valuation

¶ 4     A district court is required to find the approximate current value of all property owned by the parties. *In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003). But specific findings as to the value of each asset are not always required. *See In re Marriage of Page*, 70 P.3d 579, 582 (Colo. App. 2003). For example, if the parties' valuations of an asset conflict, the court may order that each party should retain the property in his or her possession without attributing a value. *See Antuna*, 8 P.3d at 595.

¶ 5     Wife valued the personal property at $2900, and husband initially said it was worth $500. But at the hearing, husband offered unsubstantiated "estimates" of value for particular items, such as $500 for the bedroom furniture, "somewhere in the range of

$600, $700" for lamps, and "several hundred [dollars]" for paintings and mirrors.

¶ 6     On this conflicting and imprecise evidence, we do not find an abuse of discretion in the court's conclusion that it was "almost an impossibility" to value the personal property and its finding that it was equitable for each party to retain the property in his or her possession.  *See id.*

## 2.     Jamaican Home

¶ 7     Husband believed that wife and her mother owned a home in Jamaica.  Wife testified that she no longer owned the home after her mother refinanced it but acknowledged that it was worth $3600. Even if we assume that wife still owns the home, husband testified without contradiction that the home was wife's premarital property.

¶ 8     Marital property does not include property acquired by one party before the marriage.  *See* § 14-10-113(4); *see also* § 14-10-113(1) (court must set separate property aside to each spouse before dividing marital property).  Save for exceptions not relevant here, only the increase in value of separate property is marital property subject to division.  *See* § 14-10-113(1)(d), (4).  Yet there was no evidence at the hearing to show any increase in value for the

3

property in Jamaica and, thus, no marital value for the court to attribute as part of the property division. *See Zappanti*, 80 P.3d at 892 (parties must provide evidence sufficient to support their claims); *see also In re Marriage of Krejci*, 2013 COA 6, ¶ 23 (a party's failure to give the court sufficient information to rule on an issue does not provide grounds for reversal). We thus perceive no error in the omission of this property from the property division.

### 3. Marital Debt

¶ 9    The court should not assign marital liabilities disproportionately to one spouse. *In re Marriage of Speirs*, 956 P.2d 622, 623 (Colo. App. 1997) (citing *In re Marriage of Kiefer*, 738 P.2d 54 (Colo. App. 1987)). However, *Speirs* cannot be read to require a mathematically equal division of marital debt. For one thing, such a requirement would be inconsistent with the "equitable, but not necessarily equal" principle reiterated in *Antuna*. Moreover, in *Kiefer*, on which the *Speirs* division relied, a division of this court reversed a property division that had divided a portion of the value of the marital home between the spouses but had allocated all of the encumbrance on the home to only one spouse. The division specifically disavowed any requirement that the court deduct the

amount of the encumbrances before dividing the net value of the home. 738 P.2d at 56. Moreover, it noted that under the circumstances of that case — where the court had found that the parties' contributions to the marriage and the marital estate were roughly equal — "*equity* requires that wife share a part of the debt incurred on the home during the marriage as well as a part of the increase in the home's value." *Id.* (emphasis added). Thus, *Kiefer* and, by extension, *Speirs* merely stand for the general proposition acknowledged in *Antuna* — that the property and debt division must be equitable.

¶ 10    The court here found that all the parties' debt was marital, which husband does not appear to dispute on appeal. Given the disparity in the parties' income, the court deemed it fair to divide the marital debt proportionately to the parties' incomes, so it required husband to pay $29,486.90 of the marital debt while wife would pay the remaining $12,886.47. As the record shows that husband's income is more than four times wife's, the court could reasonably conclude that husband had the financial means with which to pay more of the debts. *See* § 14-10-113(1)(c) (requiring the court to consider the economic circumstances of each spouse when

dividing property); *see also In re Marriage of Faulkner*, 652 P.2d 572, 574 (Colo. 1982) ("It should appear obvious that a spouse's earning capabilities are properly part of the 'economic circumstances' the court must consider in compliance with [the maintenance statute].").  We thus see no abuse of discretion in the unequal, but equitable, division of debts.[1]

### 4.     The Overall Property Division

¶ 11      The parties' marital estate included their marital debt, the personal property, and husband's $4000 401(k).  As mentioned, the court ordered that the parties would keep the personal property in their possession, and it divided the marital debt in proportion to income.  The court also allocated the 401(k) equally between the parties.  In light of the limited estate, and recognizing that husband was earning $9583 per month while wife was "living at poverty level," this property division is fair and equitable.  *See* § 14-10-

---

[1] In allocating the debts "in proportion to income," the court used a "40/60" split, reflecting the relative income figures after adjusting for the maintenance award.  Because property division is supposed to be completed before maintenance is determined, *see In re Marriage of de Koning*, 2016 CO 2, ¶ 21, this procedure may have been erroneous.  However, because neither party challenges this aspect of the order, we will not disturb the order on that basis.

113(1)(c) (property division requires the court to consider the parties' economic circumstances).[2]

## II. Maintenance Award

¶ 12    Husband contends that the district court abused its discretion by awarding wife spousal maintenance without applying the required statutory factors. We agree, and therefore reverse and remand the maintenance award for reconsideration.

¶ 13    Section 14-10-114(3), C.R.S. 2019, details a specific process a district court must follow when considering a maintenance request. *In re Marriage of Vittetoe*, 2016 COA 71, ¶¶ 8-9.

¶ 14    First, a court considering a maintenance request

> shall make initial written or oral findings concerning:
>
> (A) The amount of each party's gross income;
>
> (B) The marital property apportioned to each party;
>
> (C) The financial resources of each party, including but not limited to the actual or

---

[2] We have not considered husband's new assertion that wife failed to disclose her current finances and provide mandatory disclosures before the hearing, as he did not raise such challenges in the district court. *See In re Marriage of Wells*, 252 P.3d 1212, 1215 (Colo. App. 2011) (reviewing court will not address issues not presented in the district court).

potential income from separate or marital property;

(D) Reasonable financial need as established during the marriage; and

(E) Whether maintenance awarded pursuant to this section would be deductible for federal income tax purposes by the payor and taxable income to the recipient.

§ 14-10-114(3)(a)(I); *see also People in Interest of C.N.*, 2018 COA 165, ¶ 35 (the word "shall" in a statute has a mandatory connotation).

¶ 15     Next, the court

shall determine the amount and term of the maintenance award, if any, that is fair and equitable to both parties after considering:

(A) The guideline amount and term of maintenance set forth in paragraph (b) of subsection (3), if applicable, based upon the duration of the marriage and the combined gross incomes of the parties;

(B) The factors relating to the amount and term of maintenance set forth in paragraph (c) of this subsection (3); and

(C) Whether the party seeking maintenance has met the requirement for a maintenance award pursuant to paragraph (d) of this subsection (3).

§ 14-10-114(3)(a)(II).  The section 14-10-114(3)(b) guidelines do not create a presumptive amount or term of maintenance.  § 14-10-114(3)(e).  Moreover, the factors set forth in section 14-10-114(3)(c) are not exclusive, as the final factor is "[a]ny other factor that the court deems relevant."  § 14-10-114(3)(c)(XIII).  Thus, "[t]he court has discretion to determine the award of maintenance that is fair and equitable to both parties based upon the totality of the circumstances."  § 14-10-114(3)(e).

¶ 16    Finally, the court must consider whether the party seeking maintenance has met the requirement for a maintenance award under section 14-10-114(3)(d).  § 14-10-114(3)(a)(II)(C).  The statute makes clear, however, that the court is to consider this issue only "[a]fter considering the provisions of this section and making the required findings of fact."  § 14-10-114(3)(d).  Under this section, the court shall award maintenance

> only if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it inappropriate for the

> spouse to be required to seek employment outside the home.

In other words, although the legislature has instructed the trial court to consider this arguably threshold inquiry last, it is nevertheless an essential finding before maintenance may be awarded.

¶ 17    Whether the court grants or denies a maintenance request, it "shall make specific written or oral findings in support of" its decision. § 14-10-114(3)(e).

¶ 18    The following is the court's maintenance order:

> 3. The Court Orders that Mr. Wright pay spousal maintenance to Mrs. Wright.
>
> a. The Court finds that Mrs. Wright has a need for spousal maintenance and that Mr. Wright has the ability to pay.
>
> b. The Court Orders that Mr. Wright pay $2,585 per month in spousal maintenance for 6 years and 4 months.  The Court calculates that amount based on a finding that the parties were married for 12 years and 8 months, that Mrs. Wright earns $2,080 per month and Mr. Wright earns $9,583 per month.  The Court finds that under C.R.S. § 14-10-114, the Court is able to find that the guideline amount is the proper amount.
>
> c. The Court generated a Spousal Maintenance and [a] Child Support worksheet to reflect these calculations which have been filed

10

> contemporaneously with this Order and are
> hereby incorporated as a part of the Order.

¶ 19    These findings are insufficient under the statute, since they lack most of the required findings under subsections (3)(a)(I) and (3)(d) and do not demonstrate consideration of any of the thirteen factors within subsection (3)(c).  The first step requires specific findings, either written or oral.  The district court did not make any findings regarding the parties' reasonable needs as established during the marriage, or whether the maintenance would be deductible for federal income tax purposes.

¶ 20    The second step does not require explicit findings.  However, while a district court has no obligation to make specific factual findings on every factor listed in section 14-10-114(3)(c), it must "make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order."  *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9.  We are not convinced by wife's argument that it is enough for the court to have made a "generalized statement" that it looked at the statutory factors.  *See id.*  Although the district court alluded to "the additional criteria set

11

out in [section] 14-10-114," there is no other indication in the court's findings that those criteria were meaningfully considered.

¶ 21    For example, the district court made no mention of husband's claim that wife was underemployed.[3]  Moreover, the district court did not mention, and it is unclear whether it considered, the impact of the disproportionate allocation of marital debts on either wife's needs or husband's ability to pay.

¶ 22    Here, the district court first considered whether wife qualified for maintenance, which pursuant to statute is supposed to be the last thing considered.  Next, the district court calculated the amount and term pursuant to the statutory guideline, incorporating the first of the required written findings under section 14-10-

---

[3] Husband's opening brief includes a variety of factual assertions regarding the income potential of someone who holds a phlebotomist license.  We cannot consider those assertions, as they rely on factual material not provided to the district court.  Nor do we express any opinion as to whether wife is voluntarily underemployed.  That decision is for the district court to make after considering the relevant evidence and case law.  *See, e.g.*, *People v. Martinez*, 70 P.3d 474, 475 (Colo. 2003) ("The income imputation inquiry must start with whether the parent is shirking a child support obligation.").  Though *Martinez* was a child support case, the analysis of voluntary underemployment is the same in a maintenance case.  *See In re Marriage of Tooker*, 2019 COA 83, ¶¶ 25-27.

114(3)(a)(I).  Finally, the court observed in its oral order that the evidence "as well as the additional criteria set out in [section] 14-10-114 cause the court to be able to find that the guideline amount is the proper amount for spousal maintenance."  In other words, it appears that the court gave the guideline amount presumptive effect, then looked for but did not find any reason to deviate from that amount.  This is not the process required by statute.

¶ 23    Accordingly, we reverse the maintenance award and remand for the district court to follow the procedure specified by section 14-10-114(3), making findings where required and addressing the factors relevant to its maintenance determination.  The findings entered on remand must be sufficient for us to determine the basis for the maintenance award.  *See Gibbs*, ¶ 9.

¶ 24    Because maintenance is based on the parties' financial circumstances at the time the order is entered, the district court should consider the parties' current circumstances on remand.  *See In re Marriage of Kann*, 2017 COA 94, ¶ 79.  For that reason, we need not consider husband's argument that the court improperly calculated wife's income.

### III. Attorney Fees Sanction

¶ 25 Wife moved to compel husband's disclosure of bank statements, credit card statements, and additional income documentation. Her motion sought sanctions under C.R.C.P. 16.2(e) and attorney fees under C.R.C.P. 37. A few days after filing her motion, wife submitted a trial management certificate on her own behalf. Wife later submitted an attorney fee affidavit showing that "[t]o date," she had incurred $6681.47 in attorney fees.

¶ 26 After the permanent orders hearing, the court ordered husband to pay wife $2500 of attorney fees "for causing [wife] to have to file a [m]otion to [c]ompel by providing incomplete disclosures and for his failure to participate in the drafting of the [t]rial [m]anagement [c]ertificate." Husband contends that this order is an abuse of discretion. We disagree.

¶ 27 Under C.R.C.P. 16.2(e), parties must disclose all information material to the resolution of the case, including mandatory disclosures such as sworn financial affidavits, personal bank statements, and income documentation. Under C.R.C.P. 16.2(h)(2), if at least one party is represented by counsel the parties shall prepare and file a joint trial management certificate (TMC). The

district court has considerable discretion to impose appropriate sanctions if a party fails to comply with the provisions of C.R.C.P. 16.2. *See* C.R.C.P. 16.2(e), (j); *In re Marriage of Cardona*, 321 P.3d 518, 527 (Colo. App. 2010), *aff'd on other grounds*, 2014 CO 3.

¶ 28 Under C.R.C.P. 37, a party may move for an order compelling disclosure and imposing sanctions. C.R.C.P. 37(a)(4)(A) allows the district court to require the party whose conduct necessitated the motion to pay to the moving party the reasonable expenses incurred in making the motion, including attorney fees.

¶ 29 We will not disturb the district court's imposition of sanctions absent an abuse of discretion. *See Cardona*, 321 P.3d at 527 (C.R.C.P. 16.2); *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 598 (Colo. App. 2007) (C.R.C.P. 37).

¶ 30 Despite husband's cursory statement that he complied with disclosures, the record shows that he provided wife with limited financial information, which prompted wife's motion to compel. In addition, husband did not cooperate in drafting the TMC, which the court concluded resulted in needlessly incurred expenses. Based on this record, we cannot conclude that the district court abused its discretion by imposing a sanction.

¶ 31     Nor did husband ever challenge the reasonableness of the fee award or request a hearing in the district court to test that reasonableness. In fact, when submitting his objections to the form of the written order, he challenged only the decision to order fees, not the amount ordered.[4] Thus, any challenge to the reasonableness of the fees ordered is not before us. *See Metro Nat'l Bank v. Roe*, 675 P.2d 331, 333 (Colo. App. 1983) (where the question of reasonableness of the attorney fees was not raised at the trial or hearing, it was not properly an issue on appeal).

¶ 32     Similarly, because it was first raised in the reply brief, we do not consider husband's argument that section 13-17-102(6), C.R.S. 2019, prohibited the court from entering the sanction because he was pro se at the hearing. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 24 (reviewing court will not consider issues not raised until the reply brief).

---

[4] Husband's version of the written order asserted that he had to pay his own attorney fees and that both parties should be responsible for their own fees. Husband's argument appears to misunderstand the nature of the fee order. Fees were not ordered pursuant to section 14-10-119, C.R.S. 2019, which provides for a balancing of the parties' respective financial resources; rather, the fee award was a sanction for husband's misconduct in pretrial disclosures.

¶ 33     In any event, husband's pro se status does not excuse his

noncompliance with C.R.C.P. 16.2. *See Prefer v. PharmNetRx, LLC,*

18 P.3d 844, 850 (Colo. App. 2000) (acting pro se does not excuse a

party's noncompliance with discovery rules); *see also Rosenberg v.*

*Grady,* 843 P.2d 25, 26 (Colo. App. 1992) ("A pro se litigant who

chooses to rely upon his own understanding of legal principles and

procedures is required to follow the same procedural rules as those

who are qualified to practice law and must be prepared to accept

the consequences of his mistakes and errors."). To be sure,

C.R.C.P. 16.2 is drafted in a way that requires the parties, not just

parties with counsel, to comply with its provisions. *See, e.g.,*

C.R.C.P. 16.2(b) (requiring the parties, counsel, and the court to

evaluate the case at all stages); C.R.C.P. 16.2(c)(1)(B) (parties and

counsel, if any, shall attend the initial status conference); C.R.C.P.

16.2(h)(1) (unrepresented parties shall file a brief statement

identifying the disputed issues, witnesses, and exhibits).

## IV.   Bias or Prejudice

¶ 34     Husband contends that the permanent orders must be

reversed because the district court's bias and prejudice against men

and his religion are evident in its rulings. While we disapprove of

some of the court's commentary, we disagree that it requires reversal.

¶ 35 At the hearing, wife testified that she volunteered at the parties' church during the marriage. However, when wife accepted a job offer that would prevent her from continuing to volunteer with the church, husband told her not to come back to the church. A few days later, husband packed up his belongings from the parties' shared apartment and sent a text to wife saying that she had to move out by the end of the week. Thereafter, wife testified that husband stopped giving her financial assistance, which required her to obtain food stamps, stay with friends until she could obtain Section 8 housing, and rely on state-paid day care facilities. Wife also testified that husband changed his phone number and cancelled their child's health insurance without telling her. Finally, wife testified that husband stopped asking about the parties' child.

¶ 36 Peppered in among the court's factual findings and legal conclusions were the following comments:

- "The Court is disappointed with Mr. Wright. And quite frankly, I'm glad I don't attend the church that he goes to."

- "Mr. Wright caused his child to be without a home when he was upset at Ms. Wright, when he took steps to have the home given back to whoever owned the home. That caused Ms. Wright and that child to have to go – I think the kids call it couch surfing. And I just think that's unconscionable. I just think that's unconscionable. I'm disappointed that Mr. Wright, as a churchgoing man, would do that to his little girl."
- "The Court's position is is [sic] that dads who are putting their children's needs first make sure that the other parent has accurate health insurance information. And the fact that Mr. Wright chose to withhold that is very offensive to the Court, especially when he comes in and he's shedding some tears, wanting me to believe that he's putting his child first, when that fact – that's the second fact that shows that he didn't put the child's needs first."
- "You're not so different from a lot of other dads I've seen that come into court and claim that they love their child and, 'Oh, the child is the end all and the be

all and I would do anything for the child.'  I don't believe them any more than I believe you.  Because good dads don't do to their child what you did to your child."

- "I don't know what to make of this church.  I'm just glad I don't go there.  Most churches I know support family units and support kids and support dads involved in kids.  And what has been described to me today just makes me glad I don't go to your church.  And I'd be willing to bet God is disappointed with you, too."

- "Mr. Wright, I am disappointed in you.  I'm disappointed in you.  Your child will not be well served by your behavior.  And truthfully, I would expect better of a churchgoing man."

- "Mr. Wright, I am so disappointed in you.  I'm just disappointed.  I just hope you don't continue to behave like this.  That would not be good for your daughter, honestly.  And I happen to believe everything you said about the importance of dads in kids['] lives.  I know

that's a fact.  But not when you're behaving like a knucklehead."

¶ 37     A judge must be free of all taint of bias and partiality.  *Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1192 (Colo. App. 2011); *see also* C.J.C. 2.3(B) (a judge shall not manifest bias or prejudice).  But prejudice is distinguishable from the sort of personal opinions that as a matter of course arise during a judge's hearing of a cause.  *See Smith v. Dist. Court*, 629 P.2d 1055, 1057 (Colo. 1981).  Thus, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. Unites States*, 510 U.S. 540, 555-56 (1994); *see also People v. Roehrs*, 2019 COA 31, ¶ 33 (a judge ordinarily cannot be disqualified on the basis of opinions, attitudes, and knowledge gained during her participation in judicial proceedings).

¶ 38     We disapprove of the court's comments about husband's church.  However, when read in context with the evidence presented at the hearing, the comments do not reflect a bias or prejudice about husband's gender or religion.  Instead, the comments reflect the court's opinion, based on the evidence, that

husband made poor decisions to withhold money, parenting time, and proper living quarters from the child "[a]ll because he's upset with the mom." While the tone of these comments and the expression of the court's opinion about husband's church were ill advised, they were based on the evidence the court heard in the course of the proceedings and thus do not show an unreasonable or unfair bias against husband.

## V.    Appellate Attorney Fees Request

¶ 39    We deny husband's request for appellate attorney fees because he has failed to cite any legal authority for the request. *See* C.A.R. 39.1 (party claiming attorney fees must explain the legal and factual basis for an award). Citing the appellate fee rule as the sole legal basis for an attorney fees request is not sufficient. *See In re Marriage of Roddy*, 2014 COA 96, ¶ 32. ("A request which merely identifies the statute under which fees are requested, without stating specific grounds that justify an award of fees, does not adequately comply with [Rule 39.1].").

¶ 40    Husband does not assert that wife's defense of the appeal lacked substantial justification, *see* section 13-17-102, or that the parties' respective financial resources warrant an award of fees, *see*

section 14-10-119, C.R.S. 2019. He merely contends that he is entitled to fees due to his "having to file an appeal to address the abuse of discretion and reversal of spousal support decision, for fair and equitable property divisions, debts and bias." Rule 39.1 provides the procedural mechanism for this court to award fees "[i]f attorney fees are recoverable for the appeal." The rule does not, by itself, provide a substantive entitlement to fees.

¶ 41 We also deny wife's request for appellate attorney fees under C.A.R. 39.1 and section 13-17-102, for what she calls an appeal filed without "any good faith legal basis." Given our disposition, we disagree that the appeal is frivolous, groundless, or vexatious.

VI. Conclusion

¶ 42 The portion of the judgment regarding maintenance is reversed, and the case is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

JUDGE J. JONES and JUDGE FOX concur.

23