23CA1437 Parental Resp Conc ALL 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1437 Weld County District Court No. 19DR30512 Honorable Kimberly B. Schutt, Judge In re the Parental Responsibilities Concerning A.L.L., a Child, and Concerning Gillean Leslie, Petitioner, and Keegan Guiliano, Appellant, and Janette Widhalm and Stephen Widhalm, Intervenors-Appellees. ORDER AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division V Opinion by JUDGE BROWN Harris and Lum, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Johnson Law Group, LLC, Brent E. Mecham, Denver, Colorado, for Appellant Antommaria & Rodionov LLC, Milena Rodionov, Greeley, Colorado, for Intervenors-Appellees
 1 ¶ 1 In this proceeding between Keegan Guiliano (father) and maternal grandparents Janette and Stephen Widhalm (collectively, grandparents), father appeals the district court’s order granting grandparents’ motion concerning grandparent visitation disputes and denying his motion to transfer jurisdiction to Tennessee. We affirm and remand for the district court to determine and award grandparents their reasonable attorney fees. I. Relevant Facts ¶ 2 Gillean Leslie (mother) and father are the parents of A.L.L. (child), who was born in Colorado on September 20, 2018. ¶ 3 In May 2021, the district court approved a stipulated parenting plan for the child. Under the plan, mother was named the child’s primary residential parent in Colorado and father was allocated parenting time in Tennessee, where he was living, as well as in Colorado. ¶ 4 A few months later, the district court restricted mother’s parenting time, finding that her unchecked mental health issues put the child’s well-being at risk. Then, on the basis that he was effectively the child’s sole residential parent, father filed a motion to relocate the child to Tennessee and to modify parenting time 
 2 accordingly (relocation motion). The court set the matter for an evidentiary hearing. ¶ 5 Meanwhile, grandparents, who reside in Colorado, moved for and were granted visitation rights with the child under section 19-
1-117, C.R.S. 2022 (repealed and relocated to section 14-10-124.4, C.R.S. 2023, effective Aug. 7, 2023). ¶ 6 In October 2022, all parties reached a stipulation, which partly resolved father’s relocation motion. In it, they agreed that (1) the child would live with father in Tennessee; (2) mother would have summer parenting time in Colorado; (3) if mother completed her sentence to community corrections (ComCor), she could exercise parenting time in Tennessee; (4) if mother violated her ComCor sentence, grandparents would have visitation with the child for three weeks in a calendar year; and (5) the stipulation would supersede any grandparent visitation schedule previously ordered. In November, following a hearing on the remaining contested issues, the district court entered an order stating that if mother violated her ComCor sentence or was otherwise “unavailable,” grandparents could exercise her parenting time 
 3 during the 2022 Christmas break and 2023 spring break (visitation order). ¶ 7 In early December, grandparents requested a forthwith status conference to address mother’s recent termination from ComCor and resentencing to the Department of Corrections (DOC) and father’s supposed refusal to allow them visitation with the child during the upcoming Christmas break. On December 8, the district court issued an order reminding father that he was obligated to follow the visitation order in good faith. The court also made clear that any noncompliance with the visitation order could result in sanctions. Later that evening, grandfather re-sent father the itinerary for the Christmas visitation. ¶ 8 On December 9, father confirmed that he had received the itinerary and assured grandfather that a “proposal” was forthcoming. Yet on that same day, father verified and “directed the filing” of a petition to domesticate the visitation order and for an ex parte restraining order against grandparents in a Tennessee court. The petition was filed a week later, on December 16, the day before grandparents were to have Christmas visitation. 
 4 ¶ 9 Generally citing Tennessee’s version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), father alleged that the child “would suffer immediate and irreparable harm” if the visitation order took effect. He expressed confusion over what grandparents’ visitation rights were under the visitation order since mother was incarcerated. And he alleged that grandparents had previously allowed mother to have unsupervised visitation with the child and told the child that they would visit mother in the DOC over Christmas vacation. ¶ 10 The Tennessee court did not rule on father’s request to domesticate the visitation order but issued an ex parte temporary restraining order (TRO) prohibiting grandparents from contacting or removing the child from father’s “care, custody, and control,” “pending further orders of this [c]ourt.” Grandparents traveled to Tennessee and appeared through counsel in the Tennessee proceeding. Because of the Tennessee TRO, grandparents did not have visitation with the child during Christmas break. ¶ 11 In January 2023, grandparents filed a motion concerning grandparent visitation disputes under section 19-1-117.5(2), C.R.S. 2022 (repealed and relocated to section 14-10-124.5, C.R.S. 2023, 
 5 effective Aug. 7, 2023). Sometime in March, the district court held a UCCJEA conference with the Tennessee court that issued the TRO; the district court maintained that Colorado had exclusive, continuing jurisdiction over the child. At the end of March, the Tennessee court dissolved the TRO and dismissed father’s petition for “lack of jurisdiction.”
1 ¶ 12 Grandparents did not have their spring break visitation with the child before the TRO was dismissed. They amended their motion concerning grandparent visitation disputes, alleging that father violated the visitation order by not allowing them visitation with the child during the 2023 spring break. ¶ 13 Meanwhile, father filed a motion under section 14-13-207, C.R.S. 2023, asking the district court to relinquish jurisdiction to Tennessee on the basis that Tennessee was a more appropriate forum to address all issues concerning the child. 1 Although it appears that the exhibit containing the Tennessee court’s order was not admitted during the hearing on grandparents’ motion concerning grandparent visitation disputes and father’s motion to transfer jurisdiction to Tennessee, we take judicial notice of it as part of the court record in a related proceeding. See CRE 201; Harriman v. Cabela’s Inc., 2016 COA 43, ¶ 64. 
 6 ¶ 14 In June 2023, the district court held an evidentiary hearing on grandparents’ motion concerning grandparent visitation disputes and father’s motion to transfer jurisdiction to Tennessee. The court found father noncompliant with the visitation order: [I]t is evident to the [c]ourt that [f]ather did not comply in good faith with the [c]ourt’s orders, and had no intention of complying with those orders given the undisputed fact he had signed the verification document for the [restraining] order in Tennessee on December 9, 2022 . . . at the same time he was stringing along the [grandparents] in their emails about travel arrangements for the December visit. The court found that father presented no evidence supporting the allegations of child endangerment he made to obtain the Tennessee TRO. And it found father’s claim that he did not think the Colorado court could address his concerns not credible given the history of the case. The court ordered that grandparents would have makeup parenting time during the summer of 2023, directed father to post a $1,000 cash bond to cover any future violations of its visitation orders, and awarded grandparents their Colorado attorney fees incurred to enforce the visitation order. See § 19-1-117.5(2)(c)-(d), (4), C.R.S. 2022. 
 7 ¶ 15 The court also denied father’s motion to transfer jurisdiction to Tennessee. It reasoned that Colorado retained exclusive, continuing jurisdiction under the UCCJEA because mother still resides in Colorado and the child still has a significant connection to the state. See § 14-13-202(1), C.R.S. 2023. The court also determined that Colorado was not an inconvenient forum under section 14-13-207. II. Compliance with C.A.R. 28 and 32 ¶ 16 To begin, we observe that father’s opening brief does not comply with the appellate rules. Among other things, the rules require that father’s brief be double-spaced, see C.A.R. 32(a)(3), and that father provide record citations to support his recitation of facts in his statement of the case, see C.A.R. 28(a)(5) (Appellant’s opening brief must contain “a concise statement identifying the nature of the case, the relevant facts and procedural history, and the ruling, judgment, or order presented for review, with appropriate references to the record.”). ¶ 17 “The appellate rules are not mere technicalities, but are designed to facilitate appellate review.” Cikraji v. Snowberger, 2015 COA 66, ¶ 10. A noncompliant opening brief may be stricken, and 
 8 the appeal dismissed. See C.A.R. 38(a); see also Bruce v. City of Colorado Springs, 252 P.3d 30, 32 (Colo. App. 2010). ¶ 18 Still, because we can understand the issues on appeal, we exercise our discretion to consider father’s contentions. See Bruce, 252 P.3d at 32; but see Castillo v. Koppes-Conway, 148 P.3d 289, 291 (Colo. App. 2006) (“In light of [the appellant’s] failures and violations [of C.A.R. 28], we will not review the [district] court’s order.”). That said, we will not develop father’s arguments for him or scour the record for supporting facts. See Minshall v. Johnston, 2018 COA 44, ¶ 21; see also Cikraji, ¶ 10. We warn father that any future noncompliance with C.A.R. 28 or other applicable appellate rules may result in our striking the offending brief or imposing other appropriate sanctions, including dismissal. See C.A.R. 38(a); see also Bruce, 252 P.3d at 32. III. Grandparent Visitation Disputes ¶ 19 Father contends that the district court erred by granting grandparents’ motion concerning grandparent visitation disputes. We disagree. 
 9 A. Governing Law ¶ 20 If the district court finds after a hearing that a person with parental responsibilities has not complied with a grandparent visitation order or schedule, it may impose remedial orders. See § 19-1-117.5(2), C.R.S. 2022; In re Adoption of C.A., 137 P.3d 318, 324 (Colo. 2006). The district court has broad discretion to make or modify orders to resolve disputes concerning grandparent visitation. See § 14-10-129(1)(a), C.R.S. 2023; § 19-1-117.5(2), C.R.S. 2022; cf. In re Marriage of Dean, 2017 COA 51, ¶ 19 (“To resolve disputes concerning parenting time, courts have broad authority to make or modify parenting time orders that are in the best interests of the children.”). We review the district court’s findings of fact for clear error and its legal conclusions de novo. In re Marriage of de Koning, 2016 CO 2, ¶ 17. B. Discussion ¶ 21 Father contends that the district court failed to give full faith and credit to the Tennessee TRO, which he argues relieved him of his obligation to comply with the visitation order. We reject this contention. 
 10 ¶ 22 Because the Tennessee TRO qualifies as a “child-custody determination,” we look to our provisions of the UCCJEA. See § 14-
13-102(3), C.R.S. 2023; see also People in Interest of S.A.G., 2021 CO 38, ¶ 24 (section 14-13-102(3) defines “child-custody determination” very broadly); People in Interest of M.C., 94 P.3d 1220, 1224 (Colo. App. 2004) (a temporary restraining order constitutes a “child-custody determination” within the meaning of the UCCJEA); see also § 13-14-110(1), C.R.S. 2023 (a “custody order” is excluded from the definition of a “foreign protection order”). ¶ 23 “The primary aim of the UCCJEA is to prevent competing and conflicting custody orders by courts in different jurisdictions” and to “avoid jurisdictional competition over child-custody matters in an increasingly mobile society.” People in Interest of M.M.V., 2020 COA 94, ¶ 17. As relevant here, section 14-13-303(1), C.R.S. 2023, requires Colorado courts to recognize and enforce a child-custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with or under factual circumstances satisfying the jurisdictional requirements of the UCCJEA. 
 11 ¶ 24 As best we understand, father contends that when the district court found that he acted in bad faith and failed to comply with the visitation order, it necessarily failed to recognize and enforce the Tennessee TRO. Father argues he was simply “complying with [the] valid and superior” Tennessee TRO when he denied grandparents their court-ordered visitation, so he should not be penalized for violating the Colorado visitation order. The district court was not persuaded by father’s arguments, and we are not either. ¶ 25 As an initial matter, nothing in the UCCJEA makes the Tennessee TRO “superior” to the Colorado visitation order, and father cites no authority supporting this claim. On the contrary, the UCCJEA is designed to favor the court with exclusive, continuing jurisdiction. Even assuming the Tennessee court had temporary, emergency jurisdiction under section 14-13-204, C.R.S. 2023 — which we do not decide
2 — Colorado maintained exclusive, continuing jurisdiction under section 14-13-202. But the 2 The relevant Tennessee provision provides that “[a] court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse.” Tenn. Code Ann. § 36-
6-219(a) (West 2023). 
 12 Tennessee court was only authorized to issue a temporary emergency order lasting long enough for the petitioning party “to obtain an order from the state having jurisdiction.” § 14-13-204(3). The Tennessee court was required to specify in the order “a period that the court considers adequate” to allow the petitioner to obtain relief from the court with jurisdiction. Id. And the Tennessee court was required to “immediately communicate” with the Colorado court upon being informed that child custody proceedings were pending here. § 14-13-204(4). ¶ 26 The Tennessee TRO does not direct father to seek relief in Colorado or detail how much time would be adequate for him to do so. The record also does not reflect that the Tennessee court immediately communicated with the Colorado court. Indeed, it does not appear that the courts communicated about jurisdiction until more than two months after the TRO issued. Even setting these deficiencies aside, the Tennessee TRO was not “superior” to the Colorado visitation order under the UCCJEA. ¶ 27 In any event, the district court never declined to recognize or enforce the Tennessee TRO as required by section 14-13-303(1). The court did not, for example, compel father to deliver the child to 
 13 grandparents for visitation while the TRO remained in place; in fact, the TRO was the reason grandparents were not able to exercise visitation during Christmas or Spring Break. Instead, the district court found that father never intended to comply with the visitation order and used the Tennessee proceedings to avoid having to comply with that order. Both things can be true: the TRO — obtained ex parte and never tested on the merits — could have been a valid and enforceable temporary order, and father could have initiated the TRO proceedings in bad faith for the purpose of depriving grandparents of their court-ordered visitation. ¶ 28 The record supports the district court’s findings regarding father’s conduct and credibility. It is undisputed that father did not allow the child to spend time with grandparents over Christmas. Father signed the Tennessee petition one day after the district court entered its December 2022 order requiring him to comply in good faith with the visitation order while simultaneously purporting to coordinate with grandfather on the child’s travel to Colorado for Christmas visitation. Then father filed the petition and obtained the ex parte TRO one day before grandparents’ visitation was supposed to start. And even though the district court had been 
 14 deeply involved in the underlying controversy since its inception, father went to the Tennessee court professing not to understand how the Colorado visitation order worked and seeking a restraining order based in part on alleged violations of the visitation order. ¶ 29 The district court also found that father was not credible when he said he did not think it could address his concerns about the child because the case was “administratively closed.” As the court noted, father had filed a motion to restrict mother’s parenting time in June 2021, which was granted, even though the case had been administratively closed at that time too. Even if father believed obtaining the Tennessee TRO was a faster option, father never filed a motion seeking a similar order from the district court. And at the hearing before the district court, father offered no evidence to support the allegations he made to obtain the TRO — namely, that grandparents had or would endanger the child during the 2022 Christmas break. ¶ 30 In the end, we conclude that the district court did not fail to give the Tennessee TRO full faith and credit and that its findings that father violated the visitation order enjoy record support. Thus, 
 15 the district court did not err when it granted grandparents’ motion concerning grandparent visitation disputes. ¶ 31 Father also contends that if we reverse the district court’s determination that he violated the visitation order, we should also reverse its remedial orders, including the requirements that he post a bond to secure his compliance with visitation orders and that he pay grandparents’ attorney fees. He makes no argument that these remedial orders are otherwise improper. Given our disposition, we need not address this contention. IV. Inconvenient Forum ¶ 32 Next, father contends that the district court abused its discretion when it declined to transfer jurisdiction to Tennessee. We are not persuaded. ¶ 33 Under the UCCJEA, the court that entered the initial child-
custody determination retains exclusive, continuing jurisdiction over that matter until (a) the child and parents lack a significant connection with the issuing state and substantial evidence is no longer available there, or (b) the child and parents do not presently reside in the issuing state. § 14-13-202(1)(a)-(b); People in Interest of M.S., 2017 COA 60, ¶ 15. The court with exclusive, continuing 
 16 jurisdiction may also relinquish its jurisdiction to another state when it determines that the other state would be a more convenient forum. § 14-13-207(1); see In re Marriage of Pritchett, 80 P.3d 918, 920 (Colo. App. 2003). ¶ 34 In determining whether it is appropriate for another state to exercise jurisdiction, the district court must consider all relevant factors, including the following: • whether domestic violence has occurred; • the length of time the child has resided outside the state; • the distance between the courts; • the parties’ relative financial circumstances; • any agreement between the parties concerning jurisdiction; • the nature and location of the evidence required to resolve the pending litigation; • each court’s ability to expeditiously decide the issue; and • the familiarity of each state with the facts and issues in the pending litigation. § 14-13-207(2)(a)-(h); see also § 14-13-207 cmt. (noting that the list of statutory factors is not meant to be exclusive). 
 17 ¶ 35 The district court’s consideration of these factors and its ultimate determination that it is not an inconvenient forum are matters within its discretion. See In re Marriage of Tatum, 653 P.2d 74, 77 (Colo. App. 1982). A court abuses its discretion when it acts in a manifestly arbitrary, unreasonable, or unfair manner, or when it misapplies the law. In re Marriage of Bergeson-Flanders, 2022 COA 18, ¶ 10. ¶ 36 Here, the district court, which had exclusive, continuing jurisdiction, determined that a few factors weighed heavily against transferring jurisdiction to Tennessee: (1) mother, grandparents, the child’s half sibling, and many maternal and paternal family members reside in Colorado; (2) the Colorado court is very familiar with the “significant” history in the case, including grandparents’ attempts to enforce the visitation order; (3) the majority of the evidence relating to anticipated changes in mother’s parenting time and grandparents’ visitation is in Colorado; and (4) mother is more likely to appear and participate in Colorado, even while incarcerated. The court also reasoned that the child had been living in Tennessee for only the past two years and that it would continue to accommodate remote appearances by father or any 
 18 other witnesses located in Tennessee. Although the court did not make explicit factual findings addressing every factor, it did not have to. See § 14-13-207(2) (requiring the court to “consider all relevant factors”); In re Marriage of Wright, 2020 COA 11, ¶ 20 (When a court is required to “consider” factors, it need not make explicit findings on each one; rather it need only “make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order.” (quoting In re Marriage of Gibbs, 2019 COA 104, ¶ 9)). Given that the district court carefully considered the statutory factors it deemed relevant and because its determination is supported by the record, we discern no abuse of discretion. See Tatum, 653 P.2d at 77. ¶ 37 We acknowledge that there is other evidence in the record that could have supported a determination that Colorado was an inconvenient forum. But it is the district court’s prerogative, not ours, to resolve conflicting evidence. See In re Parental Responsibilities Concerning B.R.D., 2012 COA 63, ¶ 15 (“[W]hen there is record support for the [district] court’s findings, its resolution of conflicting evidence is binding on review.”). It is not our role to reweigh the evidence to reach a different conclusion. See 
 19 People in Interest of A.J.L., 243 P.3d 244, 249, 256 (Colo. 2010) (reversing a division of this court for substituting its judgment for that of the district court regarding the credibility of witnesses and the weight, sufficiency, and probative value of the evidence). ¶ 38 We decline to address father’s unpreserved argument that the district court’s ruling failed to consider his constitutional right to parent under Troxel v. Granville, 530 U.S. 57 (2000). See Berra v. Springer & Steinberg, P.C., 251 P.3d 567, 570 (Colo. App. 2010) (to preserve an issue for appeal, it must be presented in such a way that the district court has an opportunity to rule on it); see also City & Cnty. of Broomfield v. Farmers Reservoir & Irrigation Co., 239 P.3d 1270, 1276 (Colo. 2010) (“We do not consider constitutional issues raised for the first time on appeal.”). V. Appellate Attorney Fees ¶ 39 Grandparents ask for their appellate attorney fees. Because grandparents were properly awarded attorney fees by the district court under section 19-1-117.5(2)(f), C.R.S. 2022, they are also entitled to an award of attorney fees incurred in defending this appeal. See Duhon v. Nelson, 126 P.3d 262, 269 (Colo. App. 2005) (“When a party, pursuant to a statute, has been appropriately 
 20 awarded attorney fees for a stage of the proceeding prior to the appeal, that party will be entitled to reasonable attorney fees for defending the appeal.”); cf. In re Marriage of Turilli, 2021 COA 151, ¶ 45 (awarding the aggrieved parent appellate attorney fees under section 14-10-129.5(4), C.R.S. 2023, because the district court appropriately awarded him attorney fees on that basis). The purpose of such an award, when authorized by statute, is to make grandparents whole, not to punish father for an unsuccessful appeal. See Turilli, ¶ 45; see also Levy-Wegrzyn v. Ediger, 899 P.2d 230, 233 (Colo. App. 1994). ¶ 40 Because the district court is in a better position to determine the reasonable attorney fees incurred in defending against father’s appeal, we exercise our discretion under C.A.R. 39.1 to remand the case for further proceedings on that issue. ¶ 41 Having granted grandparents’ request for appellate attorney fees under section 19-1-117.5(2)(f), C.R.S. 2022, we need not address their request for attorney fees under section 13-17-102, C.R.S. 2023. 
 21 VI. Disposition ¶ 42 The order is affirmed, and the case is remanded for the district court to determine and award grandparents their reasonable appellate attorney fees. JUDGE HARRIS and JUDGE LUM concur.