23CA1839 Marriage of Mulberry 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1839 Pitkin County District Court No. 22DR30019 Honorable Christopher G. Seldin, Judge In re the Marriage of Tharyn Dean Mulberry, Appellee, and Narendra Geneva Kristine Conway, Appellant. JUDGMENT AFFIRMED Division VI Opinion by JUDGE FREYRE Schutz and Graham*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2024 No Appearance for Appellee Narendra Geneva Kristine Conway, Pro Se *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
 1 ¶ 1 Narendra Geneva Kristine Conway (wife) appeals the district court’s permanent orders entered in connection with the dissolution of her marriage to Tharyn Dean Mulberry (husband). We affirm. I. Background ¶ 2 In 2022, after fifteen years of marriage and two children, husband filed a petition for dissolution. ¶ 3 After an evidentiary hearing, the district court issued a dissolution decree and entered permanent orders. The court divided the marital estate as follows: Marital Property Marital Value Wife’s Allocation Husband’s Allocation Marital Residence (a portion of which served as a rental unit) $263,440 $263,440 Vehicles $22,000 $11,000 $11,000 Bank Accounts $3,960 $1,980 $1,980 Husband’s PERA $351,170 $351,170 Husband’s AXA 403(b) Retirement Account (retirement account) $26,588 $26,588 Husband’s Vacation Paid Time Off (PTO) $8,900 $8,900 Debts Including Wife’s Attorney Fees and Husband’s Personal Loan ($108,839) ($108,839) SUBTOTAL $567,219 $303,008 $264,211 
 2 “Equalization” Payment ($24,092) $24,092 TOTAL $278,916 $288,303 ¶ 4 The court also directed husband to pay wife $2,000 in monthly maintenance for 100 months plus $201 in monthly child support. ¶ 5 Wife now appeals. II. Compliance with C.A.R. 28 ¶ 6 To start, we observe that wife’s opening brief violates the appellate rules. They require, among other things, that her contentions include a statement on preservation along with citations to both relevant portions of the record and legal authority. See C.A.R. 28(a)(7)(A) (“[T]he arguments . . . must contain . . . the precise location in the record where the issue was raised and where the court ruled.”), (B) (the arguments must contain appellant’s contentions and reasoning, “with citations to the authorities and parts of the record on which the appellant relies”). ¶ 7 “The appellate rules are not mere technicalities, but are designed to facilitate appellate review.” Cikraji v. Snowberger, 2015 COA 66, ¶ 10. ¶ 8 A noncompliant opening brief may be stricken and the appeal dismissed. See C.A.R. 38(a); see also Bruce v. City of Colorado 
 3 Springs, 252 P.3d 30, 32 (Colo. App. 2010). We are mindful, of course, that wife is representing herself; however, that does not excuse her from following the appellate rules. See Cikraji, ¶ 10 (pro se parties are bound by the same procedural rules as a party represented by an attorney); see also Rosenberg v. Grady, 843 P.2d 25, 26 (Colo. App. 1992) (A self-represented “litigant who chooses to rely upon h[er] own understanding of legal principles and procedures is required to follow the same procedural rules as those who are qualified to practice law and must be prepared to accept the consequences of h[er] mistakes and errors.”). ¶ 9 Still, because we can discern the issues on appeal, we exercise our discretion to consider wife’s contentions. See Bruce, 252 P.3d at 32. But see Castillo v. Koppes-Conway, 148 P.3d 289, 291 (Colo. App. 2006) (“In light of [the appellant’s] failures and violations [of C.A.R. 28], we will not review the [district] court’s order.”). That said, we will not develop her arguments for her or search the record for supporting facts. See Minshall v. Johnston, 2018 COA 44, ¶ 21; see also Cikraji, ¶ 10. ¶ 10 We warn wife that any future noncompliance with C.A.R. 28 or other applicable appellate rules could lead to our striking the 
 4 offending brief or imposing other appropriate sanctions, including dismissal. See C.A.R. 38(a); see also Bruce, 252 P.3d at 32. III. Property Division ¶ 11 Wife raises several challenges to the district court’s property division. We address and reject each. A. Standard of Review ¶ 12 A district court has great latitude in making an equitable property division based on the facts and circumstances of each case, and we will not disturb its decision absent an abuse of discretion. In re Marriage of Collins, 2023 COA 116M, ¶ 19; see § 14-10-113(1), C.R.S. 2023. “The property division must be equitable, but not necessarily equal.” In re Marriage of Wright, 2020 COA 11, ¶ 3; see In re Marriage of Gallo, 752 P.2d 47, 55 (Colo. 1988) (“The key to an equitable distribution is fairness, not mathematical precision.”). The court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. In re Marriage of Medeiros, 2023 COA 42M, ¶ 28. We review de novo the court’s application of the law. Id.; see In re Marriage of Bochner, 2023 COA 63, ¶ 18 (“De novo means ‘anew.’”). 
 5 B. Discussion 1. Husband’s AXA Retirement Account ¶ 13 As best we can discern, wife contends that the district court erred by (1) determining that husband had a separate property interest in the AXA retirement account; and (2) valuing the retirement account. We disagree. ¶ 14 Before dividing the marital estate, the district court must determine whether an asset is marital, and subject to division, or whether it is separate and not subject to division. Medeiros, ¶ 49; see § 14-10-113(1) (district court is required to set apart separate property to each party and divide the marital property). Marital property excludes property that a party owned before the marriage. See § 14-10-113(2). However, the appreciation of a party’s separate property during the marriage is a divisible asset. See § 14-10-113(4) (An asset acquired by a party before the marriage is considered marital property “to the extent that its present value exceeds its value at the time of the marriage.”); see also Wright, ¶ 8. ¶ 15 The classification of property as marital or separate is a legal determination based on the court’s factual findings. In re Marriage of Morton, 2016 COA 1, ¶ 5. We review de novo the court’s legal 
 6 determination and defer to its factual findings unless they are clearly erroneous, meaning they do not have any support in the record. Id.; see Van Gundy v. Van Gundy, 2012 COA 194, ¶ 12. ¶ 16 The district court must also determine the approximate current value of marital property. Wright, ¶ 4; see also § 14-10-113(5) (district court must value property as of the date of the permanent orders hearing when the hearing occurs before the entry of the dissolution decree). ¶ 17 The record reflects that in 1994 (about twelve years before the marriage) husband opened a Valic retirement account, which was serviced by AIG, and began investing $300 per month until sometime “before 2008.” When AIG went bankrupt in 2008, he transferred the retirement account to AXA. Due to the bankruptcy, he was unable to get any information documenting the value of the account at the time of the marriage. He testified that wife never contributed to the account. He provided an AXA statement indicating a current balance of $51,587 with a total contribution of $33,655 since 2008. ¶ 18 The district court found that the retirement account had a total value of $51,587, consisting of $25,000 of husband’s separate 
 7 property, and $26,587 of marital property. See In re Marriage of Thorburn, 2022 COA 80, ¶ 9 n.1 (district court’s oral findings supplement its written order). The court then awarded the account to wife. ¶ 19 Because there is evidence in the record to support the district court’s findings that husband established a separate property interest in the retirement account and that the account was worth $51,587, we will not disturb them. See Morton, ¶ 5; see also Wright, ¶ 4. And for the same reasons, we reject wife’s assertion that the court lacked sufficient information to determine a value or that the court speculated as to the value. ¶ 20 Still, wife argues that husband committed “perjury” by testifying that AIG went bankrupt in 2008 and that he transferred the retirement account to AXA. According to her, there were two separate accounts because husband, without her knowledge, drained the AIG and moved the funds into a hidden account. Wife’s claims concern the credibility of the testimony and other evidence considered by the district court and the weight it should be given. Such determinations are solely within the district court’s province and an appellate court may not alter them or substitute its own 
 8 judgment for the district court’s. See Thorburn, ¶ 49 (credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the district court’s sole discretion); see also In re Marriage of Wollert, 2020 CO 47, ¶ 23 (The district court’s ability to observe and evaluate the witnesses’ credibility deserves deference because a “cold record is a poor substitute for live testimony.” (quoting People v. Scott, 600 P.2d 68, 69 (Colo. 1979))); In re Marriage of Amich, 192 P.3d 422, 424 (Colo. App. 2007) (it is the district court’s prerogative to believe all, part, or none of a witness’s testimony, even if uncontroverted); In re Marriage of Udis, 780 P.2d 499, 504 (Colo. 1989) (appellate court may presume that the district court considered all of the evidence admitted). ¶ 21 Wife also argues that husband borrowed against the retirement account, leaving her responsible for repaying the debt throughout the marriage. But during the marriage, both parties are free to dispose of marital assets, even without the other party’s permission. See In re Marriage of Schmedeman, 190 P.3d 788, 791 (Colo. App. 2008). 
 9 2. Marital Residence ¶ 22 Wife next contends the district court erred in valuing the marital residence. We discern no error. ¶ 23 At the hearing, wife testified that a 2022 Pueblo County tax assessment established the fair market value of the marital residence at $283,434. She then asked the court to reduce that value by at least $5,500 to cover necessary repairs. Husband testified that the residence had a fair market value of $360,000 based on an online search. He added that the residence was encumbered by a single mortgage of roughly $35,400. ¶ 24 After noting the absence of a home appraisal, the district court found the parties’ valuation evidence unreliable. See Thorburn, ¶ 9 n.1. As to wife’s evidence, the court credited husband’s testimony that the tax-assessed value was typically lower than the fair market value. With limited evidence, the court determined that the residence had a fair market value of $300,000, less a mortgage debt of $36,560, for a net marital equity of $263,440. ¶ 25 Because the district court chose a figure between two competing values, which was reasonable given the evidence, we will not disturb it. See Medeiros, ¶ 41 (the district court may select one 
 10 party’s proposed value, reject both, or independently determine a reasonable value, and an appellate court will not disturb that determination if it is reasonable in light of the evidence as a whole); see also In re Marriage of Krejci, 2013 COA 6, ¶ 23 (the parties must furnish the district court with sufficient data to enable it to make a reasonable property valuation, and failure to do so will not constitute grounds for reversal). ¶ 26 Wife also appears to challenge the district court’s finding that husband obtained a single mortgage on the marital residence. She claims that husband “illegally” obtained additional mortgages throughout the marriage to fund his brother’s alleged criminal acts. Again, we discern no error. Husband testified that the original mortgage was sold multiple times to different lenders during the marriage; thus, the current mortgage, he said, was the “same” as the original one. See Thorburn, ¶ 49 see also Amich, 192 P.3d at 424. ¶ 27 Wife also contends that husband “fraudulently” took out a $75,000 home equity line of credit (HELOC) in violation of the temporary injunction. We are not persuaded. 
 11 ¶ 28 Upon the filing of a dissolution petition, “a temporary injunction shall be in effect against both parties until the final decree is entered . . . or until further order of the court” restraining them from “transferring, encumbering, concealing, or in any way disposing of, without the consent of the other party or an order of the court, any marital property, except in the usual course of business or for the necessities of life.” § 14-10-107(4)(b)(I)(A), C.R.S. 2023. ¶ 29 If a party unilaterally withdraws marital funds during the proceedings, in violation of the temporary injunction, the district court may rectify that violation by including the dissipated funds in the property division. See, e.g., In re Marriage of Jorgenson, 143 P.3d 1169, 1174 (Colo. App. 2006); In re Marriage of Riley-Cunningham, 7 P.3d 992, 995 (Colo. App. 1999) (dissipation occurs when a party depletes a marital asset for improper or illegitimate purposes in contemplation of the dissolution). The party who spent the funds bears the burden of demonstrating that they were used for proper expenses. See Martinez v. Gutierrez-Martinez, 77 P.3d 827, 830 (Colo. App. 2003); see also In re Marriage of Finer, 920 P.2d 325, 331 (Colo. App. 1996) (the 
 12 district court may not consider an asset to have been dissipated unless it finds that the party disposed of the asset improperly). Even so, dissipation is reserved for “extreme cases.” Jorgenson, 143 P.3d at 1173. ¶ 30 Husband testified that, with wife’s consent, he opened the HELOC and withdrew funds from it to repair the marital residence, satisfy a joint tax obligation, cover their child’s dance expenses, and pay for their dissolution-related legal fees. He said the bank later restricted his access to the HELOC and that he was forced to take out a personal loan to pay the outstanding balance. He indicated that the highest balance ever carried on the HELOC was around $31,000. As part of the permanent orders, the court granted wife’s request to allocate the personal loan with a balance of $5,989 to husband. ¶ 31 Because the record shows that husband obtained wife’s approval for the HELOC and authorized its use, we conclude that husband did not violate the temporary injunction. See § 14-10-107(4)(b)(I)(A); see also Thorburn, ¶ 49; Amich, 192 P.3d at 424. Moreover, nothing in the record shows that the expenses were used for improper purposes or incurred to deplete the marital estate 
 13 in contemplation of the dissolution proceedings. See Riley-Cunningham, 7 P.3d at 995; see also Martinez, 77 P.3d at 830. 3. Husband’s PERA ¶ 32 Wife next contends that the district court erred in valuing husband’s PERA. We disagree. ¶ 33 The district court found that the parties stipulated that husband’s PERA had a present value of $595,204 with a marital portion of $351,170. The record supports that finding. ¶ 34 Before the hearing, the parties filed a joint trial management certificate containing their stipulation: The [p]arties do not agree to the allocation of [h]usband’s PERA but do agree to the following values: [his] PERA is presently valued on a full refund basis of $595,204. [He] has been contributing since 1994, the parties’ [d]ate of [m]arriage is 2006 and it is currently 2023. [His] separate property claim to the PERA is 41% with the marital portion being 59%. Accordingly, the martial portion is $351,170. At the hearing, husband testified about the stipulation and requested that the court approve it. Then, wife testified briefly, and contrary to the stipulation, that the PERA account was “twice undervalued,” and claimed its actual worth exceeded $1 million. Because it was up to the district court to decide the credibility of 
 14 the evidence before it, we discern no abuse of discretion in the court’s decision to accept the parties’ stipulated values rather than wife’s contrary testimony. See Thorburn, ¶ 49; see also Amich, 192 P.3d at 424; Krejci, ¶ 23. 4. Husband’s Cafeteria Plan ¶ 35 Wife next contends that the district court erred by excluding from the marital estate husband’s cafeteria plan sponsored by his employer. We decline to address the issue because it is undeveloped. See In re Marriage of Zander, 2019 COA 149, ¶ 27 (appellate court will not consider an argument not supported by legal authority or any meaningful legal analysis), aff’d, 2021 CO 12; Barnett v. Elite Props. of Am., Inc., 252 P.3d 14, 19 (Colo. App. 2010) (“We will not consider a bald legal proposition presented without argument or development.”). 5. Husband’s Vacation PTO ¶ 36 Wife next contends that the district court should have given her all of husband’s Vacation PTO. We disagree. ¶ 37 The district court found that husband, who was earning $174,731 annually, had 106 hours of vacation PTO, which equated to approximately $8,900 based on his hourly wage of $84. See 
 15 Thorburn, ¶ 9 n.1. The court then found it appropriate to award all his vacation PTO to him. ¶ 38 Husband testified that he could only cash out his unused vacation PTO every two years, with the next opportunity being in November 2024. He also said that given the stress of his job and the impact of the COVID-19 pandemic, he would like the opportunity to take a vacation. ¶ 39 Given that the district court’s findings have ample record support, we cannot say that the court’s allocation was manifestly unreasonable or unfair. See Collins, ¶ 19. IV. Maintenance and Child Support ¶ 40 Last, we decline to address wife’s undeveloped argument that the district court erred by failing to order an income assignment for husband’s maintenance and child support obligations. See Zander, ¶ 27. V. Disposition ¶ 41 The judgment is affirmed. JUDGE SCHUTZ and JUDGE GRAHAM concur.