**In re the MARRIAGE OF Patricia AMICH, f/k/a Patricia Adiutori, Appellee,**

**and**

**John ADIUTORI, Appellant.**

**No. 06CA2493.**

Colorado Court of Appeals,
Div. V.

Nov. 15, 2007.

Thomas C. Helgeson, P.C., Thomas C. Helgeson, Andrea Dalton, Wheat Ridge, Colorado, for Appellee.

Law Office of Rebecca Winters, P.C., Rebecca Winters, Lakewood, Colorado, for Appellant.

Opinion by Judge ROMÁN.

In this annulment proceeding, John Adiutori (husband) appeals from the permanent orders regarding property. We affirm in part, vacate in part, and remand for further proceedings.

Husband and Patricia Amich, formerly known as Patricia Adiutori (wife), were married in February 2006. In May 2006, wife petitioned for a declaration of the invalidity of the marriage, alleging that at the time of the marriage she had been suffering from a mental incapacity due to heavy doses of medications prescribed for pain and depression following major surgery.

In November 2006, the trial court granted wife's petition and entered orders regarding the parties' property. Among other things, the court found that wife had not made a gift to husband of $30,000 and a Lexus automobile, as husband had argued, and that as husband was the party last in possession of wife's jewelry, he would be responsible for its loss. Husband now appeals from these orders.

## I.

■ Husband contends that wife gave him $30,000 and a Lexus automobile and that the trial court erred in failing to award these items to him. We disagree.

■ To be considered a gift, a transfer of property from one spouse to the other must involve a simultaneous intention to make a gift, delivery of the gift, and acceptance of the gift. *In re Marriage of Balanson*, 25 P.3d 28, 37 (Colo.2001).

Here, husband and wife offered conflicting testimony regarding wife's intentions as to a Lexus automobile purchased by wife and driven by husband and a $30,000 check written by wife to husband. Wife testified that she had not intended to make a gift to husband, but "felt forced into everything." Husband testified that wife offered to give him a check for $30,000, which he could use to purchase a Corvette if he wanted to trade in the Lexus, or keep as a gift if he chose to keep the Lexus.

The court did not find that husband had forced wife to act, but it also did not find that she intended to give husband $30,000 and a Lexus automobile. Rather, the court found that wife intended that there should be two marital automobiles, one for her to drive and one for husband to drive, and that she contemplated obtaining a Corvette instead of a Lexus for husband to drive.

The trial court can believe all, part, or none of a witness's testimony, even if uncontroverted, and its resolution of conflicting evidence is binding on review. *In re Marriage of Bowles*, 916 P.2d 615, 617 (Colo.App. 1995). In this case, the court was not persuaded that wife had intended to make a gift to husband. We may not disturb the court's resolution of the conflicting evidence on this issue.

## II.

■ Husband contends that the trial court erred in admitting a note containing a privileged attorney-client communication. We conclude that under the circumstances present here, the court abused its discretion in finding that the attorney-client privilege had been waived.

■ Colorado courts have adopted an "ad hoc" approach to determining whether an inadvertent disclosure of privileged documents by an attorney or client constitutes a waiver of the privilege. *Floyd v. Coors Brewing Co.*, 952 P.2d 797, 808–09 (Colo.App. 1997), *rev'd on other grounds*, 978 P.2d 663 (Colo.1999). Among the factors to be considered is the extent to which reasonable precautions were taken to prevent the disclosure of privileged information. *Floyd*, 952 P.2d at 809.

The same factor has been given significant weight in other jurisdictions in determining whether privilege has been waived as a result of the unauthorized disclosure of privileged documents by persons other than the attorney or the client. *See, e.g., United Mine Workers of Am. Int'l Union v. Arch Mineral Corp.*, 145 F.R.D. 3, 5–6 (D.D.C.1992) (privilege waived with respect to documents leaked to the union; corporation failed to show that it had taken all possible precautions to maintain the confidentiality of the privileged documents); *Bower v. Weisman*, 669 F.Supp. 602, 605–606 (S.D.N.Y.1987) (client waived privilege with respect to letter from attorney left on table in hotel suite shared with another party; conduct with respect to letter demonstrated insufficient in-

terest in maintaining confidentiality of the document).

In jurisdictions that have adopted this approach, the determination whether an inadvertent disclosure of privileged documents constitutes a waiver of the privilege is a matter within the discretion of the trial court. *See Gray v. Bicknell*, 86 F.3d 1472, 1484 (8th Cir.1996) (applying Missouri law); *JWP Zack, Inc. v. Hoosier Energy Rural Elec. Coop., Inc.*, 709 N.E.2d 336, 342–43 (Ind.Ct. App.1999).

Here, wife testified she found a note in husband's handwriting of a conversation with his criminal attorney in which he indicated he was keeping her jewelry as a bargaining tool. Wife testified that she discovered the note on an end table, underneath a telephone, in the living room of the home that she no longer lived in and no longer had a key to. She further testified that she entered the home when husband was not present, that husband did not know she was coming over until she arrived with police unannounced, and that husband was arrested and escorted out of the home in handcuffs for allegedly violating a restraining order, which turned out to be false. During a fifteen-minute police-assisted access period in which she was permitted to obtain her personal belongings, wife found the note.

Husband objected to the admission of this note on the ground that it was privileged as an attorney-client communication.

The court overruled the objection, finding that husband had not made a reasonable effort to maintain the confidentiality of the note.

Husband argues that because (1) wife had moved out and no longer had a key to the home, (2) the note was left underneath a phone instead of in plain view, and (3) husband did not invite wife into the home or have an opportunity to further conceal the privileged note due to his unexpected arrest and removal in handcuffs, it was not unreasonable for him to leave a note regarding a conversation with his attorney underneath a telephone in his home.

Applying the ad hoc approach, under the circumstances of this case, we agree and conclude that husband's efforts to maintain the confidentiality of the note were reasonable. Accordingly, we conclude that it was unreasonable, and an abuse of the trial court's discretion, to conclude that the attorney-client privilege had been waived. Thus, the court erred in admitting a note summarizing a privileged attorney-client communication. Nonetheless, for the reasons discussed in Part III, we find the error harmless.

## III.

■ Husband next contends that the trial court erred in permitting wife to testify as to statements made to her by his former attorney. Husband argues that these statements were hearsay and should have been excluded under CRE 802. We disagree.

A statement is not hearsay if it is a statement made by a party's agent or servant concerning a matter within the scope of the agency or employment. CRE 802(d)(2)(D). Construing an identical federal rule, courts have found that statements made by an attorney concerning a matter within his employment may be admissible against the party who retained the attorney. *See, e.g., United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir.1981). Because the Colorado rule and the federal rule are identical, we may look to federal authority in construing the Colorado rule. *Benton v. Adams*, 56 P.3d 81, 86 (Colo.2002).

Husband did not dispute that he and his former attorney had discussed the fact that he was in possession of wife's jewelry. Nor did he deny that the attorney represented him at the time the attorney allegedly telephoned wife to discuss a proposal that husband would return the jewelry to her in exchange for the Lexus automobile. Because husband's possession of wife's jewelry and his intentions regarding the jewelry were matters within the scope of the attorney's employment, wife's testimony regarding the statements made by the attorney was not hearsay, and the trial court did not err in overruling husband's objection to it.

## IV.

■ Husband contends that the trial court erred in finding that his possession of wife's

jewelry was in the nature of a bailment. He argues that the court should have decided the matter as a division of marital property under section 14–10–113, C.R.S.2007, and that even if a bailment existed, the court could not find him responsible for the lost jewelry in the absence of any finding of negligence on his part. We are not persuaded that the court erred in applying the law regarding bailments rather than section 14–10–113 in determining husband's responsibility for the lost jewelry, nor are we persuaded that the court abused its discretion in concluding that a bailment existed under the circumstances present here. However, we agree that further findings are needed regarding husband's negligence.

■ Whether the court has applied the correct legal standard in making its findings is a question of law that the appellate court reviews de novo. *In re Marriage of Fickling*, 100 P.3d 571, 573 (Colo.App.2004).

■ A bailment is a delivery of personal property by one person to another with an express or implied contract that the property will be returned or accounted for when the bailor reclaims the property. *Christensen v. Hoover*, 643 P.2d 525, 528–29 (Colo.1982).

■ Even a gratuitous bailee has a duty to exercise reasonable care to protect the bailor's property. *Id.* at 529. If a bailee cannot redeliver the property to the bailor, a presumption of negligence on the part of the bailee arises. *Id.* at 530.

Here, wife testified that she last saw her jewelry box on May 11, 2006, in husband's home. She and several members of her family had gone there to remove her personal belongings from the home, but she did not remove the jewelry box. Husband testified that he did not know what had happened to the jewelry. He stated that he had last seen it on June 14, 2006, before he was arrested and removed from the property. After husband was removed from the property, wife obtained a key and had the locks changed. Husband did not get back into the home until June 26.

The trial court found that husband was last in possession of the jewelry, that his posses-sion of it was in the nature of a bailment, and that as bailee he was responsible for its loss.

We reject husband's argument that because section 14–10–113 governs the disposition of property at the conclusion of a marriage, the trial court could not find a bailment. Section 14–10–113(1), C.R.S.2007, provides that the court shall set apart to each spouse his or her separate property and shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors. We are not persuaded that section 14–10–113(1) prohibits the court from assigning liability to one spouse for the loss of separate property belonging to the other spouse in an appropriate case.

Husband has cited no authority for the proposition that a bailment may not exist between spouses with respect to the separate property of one of them, and we are aware of none. We note, moreover, that courts from several other states have found bailments between spouses when the facts support such a finding. *See, e.g., Vandeventer v. Vandeventer*, 132 Ohio App.3d 762, 768–69, 726 N.E.2d 534, 539 (1999) (parties entered into a bailment with respect to husband's separate property when they agreed that husband would leave the property in the former marital residence pending its sale, and wife would occupy the residence). We conclude that the court did not err in applying the law regarding bailments to determine whether husband should be held liable for the loss of wife's jewelry.

We conclude as well that the court did not abuse its discretion in determining that a bailment had been created with respect to the jewelry. The evidence presented at trial showed that husband had control of the home, and thus, had possession of the jewelry that wife had left there, for a period of time after wife's departure. Based on this evidence, the court reasonably could conclude that a bailment existed. We will not disturb this conclusion. *See In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo.App.2003) (the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from the evidence are

matters within the sole discretion of the trial court). We reject husband's argument that the jewelry never "came into his possession" because wife "merely neglected to remove it." When wife failed to remove her jewelry from husband's home, husband came into lawful possession of it. Under those circumstances, no agreement between the spouses was necessary. *See Christensen,* 643 P.2d at 529.

■ However, we agree that the court erred in holding husband responsible for the loss of the jewelry in the absence of findings regarding his negligence. Husband's failure to return the jewelry to wife created only a presumption of negligence on his part, not proof of his negligence. Here, the court made no findings as to whether husband was negligent in providing for the security of the jewelry or whether any such negligence led to the loss of the jewelry. Accordingly, we conclude that the matter must be remanded to the trial court for the necessary findings.

The permanent orders are vacated with respect to the provision that husband is to be held responsible for the loss of wife's jewelry, and the case is remanded for further proceedings as to that jewelry. On remand, the court shall make findings regarding husband's negligence, if any, in caring for the jewelry and securing it against loss. The court shall then reconsider whether husband should be held liable for the loss of the jewelry in the light of such findings. In its discretion, the court may permit the parties to present additional evidence on this issue. The permanent orders are affirmed in all other respects.

LOEB and NIETO *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and