22CA2275 & 23CA0621 Herndon v Clark 09-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals Nos. 22CA2275 & 23CA0621
Fremont County District Court No. 21DR30106
Honorable Lynette M. Wenner, Judge

---

Devon Deyarman Herndon,

Appellant,

v.

Clancy James Clark,

Appellee.

---

JUDGMENT AFFIRMED, ORDER AFFIRMED IN PART AND REVERSED
IN PART, AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Yun and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

---

Family Law Center of the Rockies, Chris McLane, Golden, Colorado, for
Appellant

Cordova Law Firm, LLP, Zachary D. Cordova, Salida, Colorado, for Appellee

¶ 1    Devon Deyarman Herndon appeals the district court's judgment concluding that no common law marriage existed between herself and Clancy James Clark and order awarding Mr. Clark his attorney fees and costs. We affirm the district court's judgment, affirm in part and reverse in part the order, and remand the case for further proceedings.

## I.    Background

¶ 2    In December 2021, Ms. Herndon filed for a divorce, claiming that she and Mr. Clark had been common law married since November 6, 2016 — the date the parties moved from New Mexico to Colorado. In late 2022, following a two-day evidentiary hearing, the district court found that the parties weren't common law married and dismissed the dissolution petition.

¶ 3    The court then found that her dissolution action was frivolous and vexatious under section 13-17-102(2), (4), C.R.S. 2024. As a result, the court awarded Mr. Clark his attorney fees and costs.

¶ 4    After reviewing Mr. Clark's affidavit and billing statements, as well as Ms. Herndon's objection contesting certain entries, the district court, in a separate order, directed her to pay $29,718 in attorney fees and costs.

## II. Issues Raised on Appeal

¶ 5     On appeal, Ms. Herndon contends that the district court erred in four respects: (1) in its disposition of several prehearing motions, either by failing to rule or denying her relief; (2) by determining that the parties weren't common law married; (3) by concluding that her petition was frivolous and vexatious and awarding Mr. Clark his attorney fees and costs pursuant to section 13-17-102; and (4) by failing to rule on her request for an order requiring Mr. Clark to pay a portion of her attorney fees pursuant to section 14-10-119, C.R.S. 2024, based on the parties' disparate financial circumstances. Finally, both parties request an award of their attorney fees incurred on appeal, Mr. Clark pursuant to section 13-17-102 and Ms. Herndon pursuant to 14-10-119.

¶ 6     We reject all of Ms. Herndon contentions of error, except her challenge to the district court's award of costs pursuant to section 13-17-102, which we reverse.  We also reject Mr. Clark's request for an award of appellate attorney fees, but remand Ms. Herndon's request for an award of appellate attorney fees pursuant section 14-10-119 to the district court.

### III. Prehearing Motions

¶ 7 Ms. Herndon challenges the district court's disposition of three prehearing motions. We address, and reject, each challenge in turn below.

### A. Ms. Herndon's Motion to Strike

¶ 8 In response to the dissolution petition, Mr. Clark asked to dismiss it, arguing that the parties were never married.

¶ 9 Ms. Herndon later moved to strike Mr. Clark's request to dismiss the dissolution petition, stating that he had failed to confer with her prior to filing it and that his request to dismiss was improperly included in a responsive pleading.

¶ 10 According to Ms. Herndon, the district court never ruled on her motion to strike, and as a result, she suffered prejudice because the court allowed Mr. Clark to proceed on his request to dismiss. But she doesn't explain exactly how she was prejudiced by the court's inaction or how the result of the proceeding would have been different had the court ruled on her motion to strike. *See* C.A.R. 35(c) (requiring the reviewing court to disregard any errors in court proceedings that don't affect the substantial rights of the parties); C.R.C.P. 61 (same); *see also People in Interest of A.C.*, 170

P.3d 844, 845 (Colo. App. 2007) (an alleged error, without an allegation of prejudice, wasn't a ground for reversal). In any event, even if the court had struck the request to dismiss, Mr. Clark's response to the dissolution petition asked for the same relief.

B. Ms. Herndon's Motions for Contempt

¶ 11    Before the hearing to determine the existence of a common law marriage, Ms. Herndon filed two separate contempt motions against two different individuals, alleging their failure to comply with subpoenas for certain documents. On appeal, Ms. Herndon argues that because the court didn't rule on her contempt motions, she never received the subpoenaed information, which, she contends, hampered her ability to effectively cross-examine those individuals at the hearing. Yet again she doesn't specifically tell us how her cross-examination was compromised. *See* C.A.R. 35(c); C.R.C.P. 61; *see also A.C.*, 170 P.3d at 845. In other words, she doesn't indicate what testimony she could have elicited and how that missing testimony would have affected the outcome.

¶ 12    We decline to address Ms. Herndon's undeveloped argument that the district court erred by not ruling on her motion for contempt against Mr. Clark based on his alleged violation of the

automatic temporary injunction. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also Biel v. Alcott*, 876 P.2d 60, 64 (Colo. App. 1993) ("An appealing party bears the burden to provide supporting authority for contentions of error asserted on appeal, and a failure to do so will result in an affirmation of the judgment."). As well, she doesn't explain how she was prejudiced by the absence of any relief with respect to the motion for contempt. *See* C.A.R. 35(c); C.R.C.P. 61; *see also A.C.*, 170 P.3d at 845.

### C. Ms. Herndon's Motion to Compel Discovery

¶ 13    Ms. Herndon insists that the district court erred by denying her motion to compel discovery responses from Mr. Clark regarding his will and estate documents. However, she doesn't demonstrate, with any legal analysis, how the court erred in that regard. Therefore, we decline to address the issue. *See Zander*, ¶ 27.

### IV. Judgment Concluding No Common Law Marriage Existed

¶ 14    Ms. Herndon contends that the district court erred in determining that the parties weren't in a common law marriage. We disagree.

## A. Legal Principles and Standard of Review

¶ 15    "[A] common law marriage may be established by the mutual consent or agreement of the couple to enter the legal and social institution of marriage, followed by conduct manifesting that mutual agreement." *Hogsett v. Neale*, 2021 CO 1, ¶ 70. "The key inquiry is whether the parties intended to enter a *marital* relationship — that is, to share a life together as spouses in a committed, intimate relationship of mutual support and obligation." *Id.*

¶ 16    In determining whether a common law marriage has been established, the court should "accord weight to evidence reflecting a couple's express agreement to marry." *Id.* Evidence of an express agreement to marry may include, but is not limited to, a marriage proposal and acceptance, participation in a ceremony in the presence of friends and family, the exchange of vows and rings, a celebratory toast, or the completion of a "Certificate of Holy Union." *LaFleur v. Pyfer*, 2021 CO 3, ¶ 54; *see Hogsett*, ¶ 62; *In re Estate of Yudkin*, 2021 CO 2, ¶ 22. However, "the traditions and symbols that mark marital commitments are not uniform," so the district court must consider the parties' interpretations of the significance

of such mores. *Hogsett*, ¶¶ 47, 62; *see LaFleur*, ¶ 55 (noting the importance of examining the range of meanings that parties may place on ceremonies).

¶ 17 If no evidence of an express agreement to marry exists, then "the parties' agreement may be inferred from their conduct." *Hogsett*, ¶ 70. The court must consider all factors that might manifest the parties' agreement, or lack of agreement, to be married. *Yudkin*, ¶ 18. Relevant factors include the parties' cohabitation; reputation in the community as spouses; maintenance of joint banking and credit accounts; purchase and joint ownership of property; filing of joint tax returns; use of one spouse's surname by the other or by children raised by the parties; evidence of shared financial responsibility, such as leases in both partners' names, joint bills, or other payment records; evidence of joint estate planning, such as wills, powers of attorney, and beneficiary and emergency contact designations; symbols of commitment, such as ceremonies, anniversaries, cards, gifts, and the couple's references to or labels for one another; and the parties' sincerely held beliefs regarding the institution of marriage. *Hogsett*, ¶¶ 55-56. These factors must be assessed in context, and the

inferences to be drawn from the parties' conduct may vary depending on the circumstances. *LaFleur*, ¶ 53.

¶ 18    A common law marriage finding depends on the totality of the circumstances; no single factor is dispositive. *Yudkin*, ¶¶ 18-19; *see also Hogsett*, ¶ 59 (noting that the significance of a given factor will depend on the individual, the relationship, and the broader circumstances, including cultural differences). Thus, the determination of whether a common law marriage exists turns on issues of fact and credibility, which are within the district court's purview. *LaFleur*, ¶ 50; *see Hogsett*, ¶ 50 (The existence of a common law marriage calls for "a flexible inquiry into the totality of the circumstances that relies on the factfinder's credibility determinations and weighing of the evidence.").

¶ 19    We review the district court's factual findings for clear error and its common law marriage determination based on those findings for an abuse of discretion. *LaFleur*, ¶ 50. A court's factual finding is clearly erroneous if there is no support for it in the record. *In re Marriage of Young*, 2021 COA 96, ¶ 8. And a court abuses its discretion when it misconstrues or misapplies the law, or makes a decision that is manifestly arbitrary, unreasonable, or unfair. *In re*

8

*Marriage of Kann*, 2017 COA 94, ¶ 56. With these principles in mind, we turn to the record that was before the district court and its findings.

### B. Additional Facts and District Court's Findings

¶ 20 The record supports the following factual findings made by the district court:

- The parties' dating relationship began in 2008.

- There was testimony that "the parties discussed marriage early in the relationship and they both agreed they did not want to get married."

- About a year later, the parties moved to New Mexico and began living together.

- In 2015, Mr. Clark bought land in Colorado, with title solely in his name. Using separate funds, he eventually built a residence there.

- On November 6, 2016, the parties moved to Colorado where common law marriages are recognized. For that reason, Ms. Herndon argued that they had entered into a common law marriage. But the district court found that the "mere act of moving to Colorado from New Mexico is

not sufficient to constitute mutual consent for marriage and there is no legal justification for such an assumption." And Ms. Herndon "acknowledged that at no time did the parties enter into an agreement to be married prior to or after November 2016."

¶ 21 The district court also found that "the parties' conduct after moving to Colorado did not follow a mutual and open assumption of a marital relationship." In support of this finding, the district court made the following subsidiary findings:

- "It [was] undisputed that no marriage proposal was made, no marriage ceremony occurred, and no marriage license was obtained by the parties before or after November 6, 2016."

- Mr. Clark hired a ghostwriter to write a self-help book for him. To establish a common law marriage, Ms. Herndon relied on the ghostwriter's use of the word "wife." But the ghostwriter explained that it "was an easier shorthand" and "not meant to describe or to be [Ms. Herndon]." The ghostwriter testified that "in no way was he told by [Mr. Clark] to use that word in reference to [Ms.] Herndon."

10

The ghostwriter added that the book "was not a memoir or a personal narrative of [Mr. Clark's] life" and contained "fictional characters and fictional stories." The only portion of the book written by Mr. Clark was the foreword wherein he didn't refer to Ms. Herndon as his wife, but instead as his "beloved."

- Ms. Herndon's expert reviewed the book and opined that the word "wife" wasn't social shorthand.

- With some help from the previous ghostwriter, Mr. Clark wrote a second self-help book, which was an extension of the first book. It was released after Ms. Herndon had petitioned for dissolution. He testified that in "writing and editing the book, he maintained the same names of the fictional characters and created fictional stories in his second book as well."

- Mr. Clark's expert testified that there were fictional stories and characters in both books and that the "wife" character was a "small insignificant presence." The expert said that the books didn't convey that Mr. Clark was married to Ms. Herndon.

- To show the existence of a common law marriage, Ms. Herndon also relied on social media posts about the books. Yet the posts were largely controlled by a company in charge of marketing. And two witnesses, both of whom worked for the company, testified that after discussing the parties' relationship, Mr. Clark "was clear that he was not married and did not desire to be married."

- "[T]he books and social media posts [were] circumstantial evidence at best" and did "not lend any credibility . . . of an intent by [Mr.] Clark to be married."

- Ms. Herndon presented, as evidence of a common law marriage, a name badge from a class reunion plus two pieces of mail showing her last name as Clark. But there "was no evidence that either party had requested the Clark name be used."

- Ms. Herndon never adopted the Clark surname.

- Ms. Herndon called one witness who testified that on one occasion Mr. Clark called Ms. Herndon his wife. She also called another witness who testified that on a separate

occasion she called Mr. Clark her husband. Her other witnesses testified that they "assumed" that the parties were married. The court found all their testimony unpersuasive.

- The parties shared a business asset from the United States Patent and Trademark Office (USPTO).

- Mr. Clark presented numerous witnesses who were "longtime acquaintances of both parties." They testified persuasively that Mr. Clark never wore a ring and never referred to Ms. Herndon as his wife.

- Moreover, the parties didn't
  o have any jointly titled bank accounts;
  o have any joint credit accounts;
  o purchase or own property together;
  o have children together;
  o have shared financial responsibilities, like joint loans;
  o share any lease agreements; or
  o have joint bills or expenses.

13

- "[T]he parties filed separate individual tax returns with a filing status of 'single' (not married) for all years they were in a relationship, and they both declared so under penalty of perjury."

- Ms. Herndon's application for life insurance "noted that she had no spouse or noted that [Mr. Clark] was her 'friend' and not a husband or spouse."

- "[T]he [c]ourt finds the parties did not buy or exchange rings as a symbol of a marriage. [Ms.] Herndon testified that she bought herself a ring to wear on her wedding finger, which [Mr.] Clark had no knowledge of, but the only evidence of this she could provide was one picture. The [c]ourt finds this evidence not to be credible."

- The parties didn't celebrate any wedding anniversaries.

- Ms. Herndon executed a trust agreement about five months after she alleged that a marriage was entered into. In it, she affirmed that she was "not married nor a partner in a civil union."

¶ 22    From those findings, the district court determined that Ms. Herndon failed to carry the burden necessary to establish a common law marriage.

## C.    Analysis

¶ 23    To begin, Ms. Herndon challenges the district court's finding that she "acknowledged that at no time did the parties enter into an agreement to be married prior to or after November 2016." She relies solely on her testimony that Mr. Clark was incorrect when he testified that there was no agreement to be married. But this argument essentially asks us to reweigh the evidence, which we can't do. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it's for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *see also In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) (the district court can believe all, part, or none of a witness's testimony, even if uncontroverted).

¶ 24    Ms. Herndon also takes issue with the district court's finding that her expert only reviewed the first book. While we agree that her expert testified that she reviewed both books, Ms. Herndon

15

doesn't explain on appeal how this mistake prejudiced her. *See* C.A.R. 35(c); C.R.C.P. 61; *see also A.C.,* 170 P.3d at 845.

¶ 25    Ms. Herndon maintains that the record contradicts the district court's factual finding that Mr. Clark's witnesses were long-time acquaintances of both parties. Again, she doesn't explain how she was prejudiced by this allegedly erroneous finding. *See* C.A.R. 35(c); C.R.C.P. 61; *see also A.C.,* 170 P.3d at 845.

¶ 26    Next, Ms. Herndon argues that the district court did not take her testimony into account. She testified that Mr. Clark commented that he would be "nice" to her when moving to Colorado because common law marriage is recognized there and that the parties shared an automobile insurance policy. But we may presume that the court considered all the evidence before it, even if it didn't make express findings regarding that evidence. *See In re Marriage of Udis,* 780 P.2d 499, 504 (Colo. 1989).

¶ 27    We reject Ms. Herndon's contention that the district court failed to consider that Mr. Clark referred to her as his "beloved" in the foreword of his first book and a jointly owned trademark, registered by the USPTO in January 2017. The court explicitly considered those facts, particularly acknowledging that the word

"beloved" wasn't the same as "wife" and that the trademark was the only asset the parties jointly owned.

¶ 28  Ms. Herndon says that the evidence — namely, both experts' testimony on Mr. Clark's books, Mr. Clark's testimony on his social media posts, and other witnesses' testimony that they either saw Mr. Clark wear a wedding ring or heard Mr. Clark call Ms. Herndon "wife" — requires the conclusion that the parties were common law married.  Once again, we decline her invitation to reweigh the evidence and substitute our judgment for that of the district court. *See Thorburn*, ¶ 49; *see also Kann*, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in [district] courts to weigh conflicting evidence."); *Amich*, 192 P.3d at 424.

¶ 29  Last, Ms. Herndon asserts that the district court should have given more weight to her witnesses as they were "local," unlike Mr. Clark's witnesses who were from "all over the world."  She cites no authority, and we are aware of none, that supports her proposition.  Thus, we decline to address the issue.  *See Zander*, ¶ 27; *see also Biel*, 876 P.2d at 64.

¶ 30  In sum, we discern no error in the district court's factual findings or in the legal standards it applied.  Nor can we say that

the court's resolution of this dispute was manifestly arbitrary, unreasonable, or unfair. Thus, the court's determination that no common law marriage existed wasn't an abuse of discretion. *See LaFleur*, ¶ 50. Accordingly, we won't disturb it.

### V. Attorney Fees and Costs Pursuant to Section 13-17-102

¶ 31 Ms. Herndon next contends that the district court erred by awarding Mr. Clark his attorney fees and costs under section 13-17-102. To get there, she says that her dissolution action was neither frivolous nor vexatious. For the reasons discussed below, we affirm the award of attorney fees, but reverse the award of costs.

### A. Legal Principles and Standard of Review

¶ 32 Section 13-17-102(2) and (4) provide for the recovery of attorney fees when a district court finds that an action is substantially frivolous or vexatious.

¶ 33 An action is substantially frivolous if "the proponent can present no rational argument based on the evidence or law in support of [it]." *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 620 (Colo. 2005).

¶ 34 An action is substantially vexatious if it is "brought or maintained in bad faith to annoy or harass another." *In re Parental*

18

*Responsibilities Concerning I.M.*, 2013 COA 107, ¶ 29.
"[V]exatiousness includes conduct that is arbitrary, abusive,
stubbornly litigious, or disrespectful of the truth." *Id.*

¶ 35      Section 13-17-102 works in conjunction with section 13-17-
103, C.R.S. 2024, which provides that "[w]hen granting an award of
attorney fees . . . , the court shall specifically set forth the reasons
for the award." § 13-17-103(1). The court must consider all
relevant factors in determining whether to assess attorney fees, like
"[t]he extent of any effort made to determine the validity of any
action or claim before said action or claim was asserted" and
"[w]hether or not the action was prosecuted or defended, in whole or
in part, in bad faith." § 13-17-103(1)(a), (e); *see In re Marriage of
Aldrich*, 945 P.2d 1370, 1379 (Colo. 1997) (district court need only
address the relevant statutory factors). Our supreme court has
held that this statute requires specific findings regarding the
statutory factors whenever a district court grants an attorney fee
request. *Munoz v. Measner*, 247 P.3d 1031, 1035 (Colo. 2011).

¶ 36      We review a district court's award of attorney fees for an abuse
of discretion. *In re Parental Responsibilities Concerning D.P.G.*, 2020
COA 115, ¶ 32. A court abuses its discretion when its decision is

manifestly arbitrary, unreasonable, or unfair, or misapplies the law. *Id.*

¶ 37     We review de novo, however, whether the district court applied the correct legal standard. *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.

### B.     Analysis

#### 1.     Award of Attorney Fees

¶ 38     As discussed at length above, Ms. Herndon, as the petitioner, bore the burden to prove the existence of the common law marriage by a preponderance of the evidence. *See Hogsett*, ¶ 13.  In order to carry that burden, the party seeking to prove the existence of a marriage generally must introduce some objective evidence of the existence of the common law marriage in order to guard against fraudulent assertions of marriage. *See id.* at ¶ 51; *see also People v. Lucero*, 747 P.2d 660, 664-65 (Colo. 1987) ("objective evidence" is any evidence of "open marital cohabitation" or "any form of evidence that openly manifests the intention of the parties that their relationship is that" of a married couple) (citation omitted), *abrogated by Hogsett*, ¶¶ 1-5.  In dismissing Ms. Herndon's petition and rejecting her claim that the parties were common law married,

the district court didn't simply find her evidence unpersuasive, it found that "the objective in this matter is overwhelming, clear, and largely undisputed that a marriage never existed." Based on this, the court found that Ms. Herndon's petition "lacked substantial justification and was a frivolous and vexatious filing," warranting an award of attorney fees pursuant to section 13-17-102.

¶ 39    In support of this conclusion, the district court found that the corroborated and undisputed objective evidence was so overwhelmingly clear that Ms. Herndon's "own conduct, sworn statements, and admissions showed she intended to keep her life separate and not married." *See Hogsett*, ¶ 51. The court added that her evidence showed that she was "either perjuring herself in all her sworn statements to the IRS, insurance providers, banks, and her own trust documents or she knew or should have known she was filing fraudulent claims."

¶ 40    The record supports the district court's findings, including its credibility determinations. *See Lucero*, 747 P.2d at 665 (whether a common law marriage exists involves issues of fact and credibility, which are within the district court's discretion); *see also Thorburn*, ¶ 49 (it is for the district court to determine witness credibility and

21

the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *Amich*, 192 P.3d at 424 (district court is entitled to believe or disbelieve all or part of a witness's testimony, even if uncontroverted).

¶ 41 The record reflects that the parties didn't have any jointly titled bank or credit card accounts; the parties did not have joint bills or expenses; the parties filed separate tax returns identifying themselves, under penalty of perjury, as "single"; Ms. Herndon executed a trust agreement, signed five months after she claimed the parties had entered into a common law marriage, wherein she wrote that she "was not married nor a partner in a civil union"; and Ms. Herndon filled out a USAA life insurance application in November 2017, making a "true" statement that Mr. Clark was a "friend"; Ms. Herndon completed a AAA life insurance application in

December 2017, referring to Mr. Clark as a "significant other";[1] the parties did not have a marriage ceremony; and the parties never celebrated any anniversaries.

¶ 42    To the extent that Ms. Herndon contends that the district court didn't make the required findings under section 13-17-103, we disagree.  The court specifically found that she initiated and continued the action against Mr. Clark notwithstanding the fact that most of her evidence contradicted her allegation that the parties entered into a common law marriage when they moved to Colorado in November 2016.  *See* § 13-17-103(1)(a), (e).

¶ 43    In all, we can't say that the district court abused its broad discretion by granting Mr. Clark's request for attorney fees under section 13-17-102(2), (4).  *See D.P.G.*, ¶ 32.

---

[1] We recognize that, in some circumstances, the failure of parties to represent themselves as "married" on government, tax, insurance, banking, or other official documentation isn't necessarily dispositive — or even strongly corroborative — of the parties' intent.  For example, same-sex couples may not have had the opportunity to label themselves as "married" on such documentation, or a couple may have mutually chosen to represent themselves as unmarried to gain a financial advantage.  However, no one points to any evidence in this case that the parties' marital-status designation on the various government documents admitted at the hearing was somehow or for some reason inconsistent with their intent.

### 2. Costs Under Section 13-17-102

¶ 44 We agree with Ms. Herndon, however, that costs aren't recoverable under section 13-17-102. *See D.P.G.*, ¶ 37 n.1 (sections 13-17-101 and 13-17-102, C.R.S. 2024, provide only for an award of attorney fees, not costs). We therefore reverse this portion of the court's order.

### VI. Ms. Herndon's Request for Attorney Fees in the District Court Pursuant to Section 14-10-119

¶ 45 Ms. Herndon asserts that the district court erred by denying her request for attorney fees under section 14-10-119. Under section 14-10-119,

> [t]he court from time to time, after considering the financial resources of both parties, may order a party to pay a *reasonable amount* for the cost to the other party of maintaining or defending any proceeding [under title 14] and for attorney fees . . . , including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

(Emphasis added.)

¶ 46 The statute doesn't prohibit a prospective fee award. *See In re Marriage of Rose*, 134 P.3d 559, 562-63 (Colo. App. 2006). But the advancement of prospective fees "should be made cautiously and

[is] to be based upon some viable evidentiary basis." *Id.* at 563 (citation omitted).

¶ 47 The district court has broad discretion in deciding whether to award fees under section 14-10-119, and its decision won't be disturbed on appeal absent an abuse of discretion. *In re Marriage of Aragon*, 2019 COA 76, ¶ 8.

¶ 48 In August 2022, Ms. Herndon moved for a temporary order requiring Mr. Clark to pay her $20,000 for "retrospective and prospective attorney fees" under section 14-10-119. The district court delayed ruling on the motion until after a "decision is made as to the existence of a marriage." During the hearing, Ms. Herndon reiterated her request for section 14-10-119 attorney fees and testified that the parties' financial circumstances were disparate. The court again reserved the issue.

¶ 49 Contrary to Ms. Herndon's view, her motion for section 14-10-119 attorney fees was denied, either by implication, *see Bd. of Cnty. Comm'rs v. Kobobel*, 74 P.3d 401, 404 (Colo. App. 2002) (when a district court doesn't rule on a motion, it may be considered implicitly denied), or as part of the court's express dismissal of her dissolution petition.

¶ 50    To be sure, in deciding a request for section 14-10-119 attorney fees, specific findings are necessary so that we may ascertain the basis for the ruling.  *See In re Marriage of McNamara*, 962 P.2d 330, 334 (Colo. App. 1998) (remanding for lack of written findings of fact with respect to denial of attorney fees under section 14-10-119); *In re Marriage of Pilcher*, 628 P.2d 126, 128 (Colo. App. 1980) (same).  But here we aren't left searching for a rationale for the court's denial of Ms. Herndon's request; in awarding Mr. Clark his fees pursuant to section 13-17-102, the court implicitly found that by initiating and maintaining a substantially frivolous and vexatious action, the attorney fees she sought to recover pursuant to section 14-10-119 were necessarily unreasonable.  That implicit finding is amply supported by the record for the reasons discussed in Part V.B.1 above.  Thus, it wasn't an abuse of discretion for the court to decline to award Ms. Herndon any portion of her attorney fees pursuant to section 14-10-119.  Accordingly, we won't disturb the district court's refusal to award Ms. Herndon any attorney fees for the proceedings in the district court.

## VII. Appellate Attorney Fees

¶ 51 Finally, both parties request an award of their attorney fees incurred on appeal, albeit on different grounds.

¶ 52 Mr. Clark argues that he is entitled to an award of his appellate attorney fees on the grounds that Ms. Herndon's appeal is frivolous. We aren't persuaded. First, Ms. Herndon did prevail on one issue — the district court's award of costs pursuant section 13-17-102. Second, although we weren't persuaded by the vast majority of the contentions Ms. Herndon advanced on appeal, we also aren't persuaded that her appeal is frivolous. *See In re Estate of Shimizu,* 2016 COA 163, ¶ 34 (declining to award appellate attorney fees to a party who successfully defended a section 13-17-102 attorneys fee award because the contentions on appeal weren't "so lacking in substance as to be frivolous").

¶ 53 Ms. Herndon seeks an award of her appellate attorney fees under section 14-10-119 based on the parties' disparate financial circumstances. Just because we affirmed a denial of those fees in the district court doesn't foreclose the prospect that they may be warranted on appeal. But because the district court is in a superior position to consider her request (including evaluating the parties'

relative financial circumstances), we direct the district court on remand to consider her request applying the standard required by section 14-10-119. *See* C.A.R. 39.1.

## VIII. Disposition

¶ 54 We affirm the district court's judgment dismissing the petition and its finding that a common law marriage didn't exist. With respect to the district court's order awarding Mr. Clark his attorney fees and costs pursuant to section 13-17-102, we affirm the court's award of attorney fees but reverse the award of costs. On remand, the district court is to consider Ms. Herndon's section 14-10-119 appellate attorney fees request.

JUDGE YUN and JUDGE LUM concur.