25CA0457 Marriage of Stremler 01-29-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0457
Douglas County District Court No. 22DR643
Honorable Daniel Warhola, Judge

---

In re the Marriage of

Jina Leigh Stremler,

Appellee,

and

Troy Dale Stremler,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE LUM
J. Jones and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

---

Fourth Street Law, LLC, Caroline C. Cooley, Christopher J. Linas, Castle Rock, Colorado, for Appellee

Anne Whalen Gill, L.L.C., Anne Whalen Gill, Castle Rock, Colorado, for Appellant

¶ 1    In this dissolution of marriage case between Troy Dale Stremler (husband) and Jina Leigh Stremler (wife), husband appeals the permanent orders regarding property division, spousal maintenance, and attorney fees.  We affirm in part, reverse in part, and remand for further proceedings.

## I.    Relevant Facts

¶ 2    The parties married in 1991 and have adult children.  In 2022, they sought to dissolve their marriage.

¶ 3    In October 2024, after an evidentiary hearing, the district court entered a dissolution decree and permanent orders.  The court accepted the parties' stipulation that the marital residence was worth $950,000.  After subtracting the mortgage and a home equity line of credit, $482,130 in net marital equity remained.  The court directed the parties to list the residence for sale at $950,000 and awarded wife the net proceeds.

¶ 4    Next, the court rejected husband's claim that the over $550,000 the parties received from his father during the marriage constituted a marital debt.  As a result, the court excluded the alleged loan from the property division.  The court then allocated to husband the entire marital interest in his company, Newdea, which

was valued at $580,356.  In the end, the court concluded that an equitable property division required husband to receive $570,561 and wife to receive $524,249.

¶ 5    The district court also granted wife monthly spousal maintenance of $3,412 for twelve years.

¶ 6    Finally, the district court ordered each party to pay their own attorney fees.

¶ 7    Husband moved for post-trial relief.  Because the marital residence sold for $1 million, the district court amended the judgment, ordering the parties to equally divide the additional $50,000 in net proceeds.  The court also supplemented its findings regarding maintenance.

¶ 8    On appeal, husband contends that the district court erred by (1) awarding the marital residence to wife instead of allowing him to buy out her interest; (2) excluding from the marital estate the claimed debt owed to his father; (3) granting wife maintenance; and (4) denying his request for attorney fees.  We address each alleged error in turn.

## II. Property Division

### A. Standard of Review

¶ 9 A district court has great latitude in making an equitable property division based on the facts and circumstances of each case, and we will not disturb its decision absent a showing of an abuse of discretion. *In re Marriage of Collins*, 2023 COA 116M, ¶ 19. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.

¶ 10 We accept the district court's factual findings unless clearly erroneous, meaning they are not supported by the record. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9; *In re Marriage of Dean*, 2017 COA 51, ¶ 8.

¶ 11 We review de novo, however, whether the district court applied the correct legal standard. *Medeiros*, ¶ 28.

### B. Discussion

#### 1. Marital Residence

¶ 12 Husband argues that the district court should have let him keep the marital residence by buying out wife's share. We conclude that the issue is moot.

¶ 13    Whether an issue is moot is a question of law that we review

de novo.  *See In re Parental Responsibilities Concerning S.Z.S.*, 2022

COA 105, ¶ 49.

¶ 14    An appellate court will not render an opinion on the merits of

an issue when subsequent events have rendered the issue moot.  *In*

*re Marriage of Tibbetts*, 2018 COA 117, ¶ 7.  An issue is moot when

the relief requested, if granted, would have no practical effect on an

existing controversy.  *See In re Marriage of Thomas*, 2021 COA 123,

¶ 21.

¶ 15    It is undisputed that the parties have already sold the marital

residence.  Thus, an order compelling wife to convey her interest to

husband so he could keep the residence would have no practical

effect.  *See id.*  Because the sale extinguished the controversy, we

dismiss as moot this part of husband's appeal.  *See id.*; *see also In*

*re Marriage of Walker*, 264 P.3d 630, 631 (Colo. App. 2011) (part of

an appeal dismissed for mootness).

2.    Alleged Marital Loan

¶ 16    Husband contends that the district court erred by excluding

from the marital estate an alleged debt owed to his father.  We

disagree.

4

¶ 17    When dividing the marital estate, the district court must determine whether a particular debt exists and, if so, whether that debt is marital. *See In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); *In re Marriage of Jorgenson*, 143 P.3d 1169, 1171-72 (Colo. App. 2006).

¶ 18    The classification of a transfer as a debt or a gift depends on the resolution of factual disputes. *See In re Marriage of Hoffman*, 650 P.2d 1344, 1345-46 (Colo. App. 1982).

¶ 19    Husband testified, and his accompanying spreadsheet showed, that he[1] took loans from his parents during the marriage and that, by the September 2024 permanent orders hearing, the loan balance had reached roughly $565,000, with almost $300,000 in accrued interest at a 4% rate. He also introduced a promissory note signed on February 4, 2024, more than a year after wife initiated the dissolution.

¶ 20    According to the note, he owed his father about $550,000 at 0% interest and agreed to repay it in monthly installments of

---

[1] The record is unclear regarding how many loans wife was aware of; however, the promissory note reflects husband's name as the only borrower.

$2,500 once the dissolution case concluded. In explaining the discrepancy between the interest rates on the spreadsheet (4%) and the promissory note (0%), husband said it was his mistake because he was not an attorney. Husband also admitted that he drafted the note specifically for the dissolution case because he expected wife to dispute the debt's legitimacy.

¶ 21 Husband's father testified that he could not remember who drafted the promissory note, when it was created, or what it said. When asked whether he reviewed the note, he answered, "I probably read it, maybe not. I'm . . . not really into that, but I . . . definitely agree with it." Husband's father pointed out that the loan carried a 4% interest rate, which conflicted with the note. And he testified that the parties made just one $100 payment during the marriage.

¶ 22 In contrast, wife testified that husband's parents gave the parties financial help, but husband or his parents always told her that it did not have to be repaid and instead would be taken out of their future inheritance. She said that whenever she suggested making repayments, husband made it seem like it "never needed to [be] pa[id] back." Moreover, she testified the alleged debt amount was far larger than anything ever mentioned before.

¶ 23    The court concluded that the promissory note shouldn't be included as a marital debt.  It found that husband's father's uncertain testimony about the promissory note, along with his willingness to agree with it anyway, indicated that he was simply trying to help his son and raised "skepticism" about the promissory note's validity.  *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49; *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007).  The court further found that the promissory note and the spreadsheet were inconsistent.  And the court credited wife's testimony about the amount of the payments received from husband's father.  *See Thorburn*, ¶ 49 (credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the district court's sole discretion); *see also Amich*, 192 P.3d at 424 (the court can believe all, part, or none of a witness's testimony, even if uncontroverted).

¶ 24    Given the record support, we may not disturb the district court's finding that a valid marital debt did not exist.  *See Hoffman*, 650 P.2d at 1345-46; *Gibbs*, ¶ 9.

### III.   Maintenance

#### A.   Standard of Review

¶ 25   We review a district court's maintenance determination for an abuse of discretion. *Medeiros*, ¶ 58. We defer to the court's factual findings if they have record support, but we review de novo whether it correctly applied the law. *Id.*

#### B.   Discussion

¶ 26   Husband says that the district court failed to consider all relevant statutory factors in determining maintenance. We are not persuaded.

¶ 27   Section 14-10-114(3), C.R.S. 2025, specifies the process a district court must follow when considering a maintenance request. *In re Marriage of Wright*, 2020 COA 11, ¶ 13. The court must first make findings concerning (1) the amount of each party's gross income; (2) the marital property apportioned to each party; (3) the financial resources of each party; (4) the reasonable financial need as established during the marriage; and (5) whether the maintenance awarded would be deductible for federal income tax purposes by the payor and taxable income to the recipient. § 14-10-114(3)(a)(I); *see Wright*, ¶ 14.

¶ 28    After making these initial findings, the district court must determine the amount and term of maintenance, if any, that is fair and equitable to the parties. § 14-10-114(3)(a)(II). In doing so, the court must weigh the statutory factors set forth in section 14-10-114(3)(c). "[W]hile a district court has no obligation to make specific factual findings on every factor listed in section 14-10-114(3)(c), it must 'make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order.'" *Wright*, ¶ 20 (quoting *Gibbs*, ¶ 9).

¶ 29    Last, section 14-10-114(3)(d) also requires the district court to find that the party seeking maintenance lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment before awarding maintenance.

¶ 30    Husband asserts that the district court failed to consider (1) the volatility of his income; (2) that wife had the qualifications to be hired as a director at a nonprofit, earning $7,500 per month; (3) that wife was awarded over $500,000 in marital property; (4) whether wife's award of marital property could generate income;

9

and (5) his age and "reasonable expectation to retire in a few years."

He is mistaken.

¶ 31    When determining maintenance, the district court made the following findings:

- The parties were married for thirty-three years and enjoyed a comfortable lifestyle.

- Husband had been the breadwinner throughout the marriage.

- Based on a three-year average, husband's monthly income was $16,656.

- And husband was likely to continue to be successful in his career.

- Wife was in her fifties and had put her career on hold for many years to raise the parties' children, which the parties agreed to early in the marriage.

- As a result of her prolonged absence from the workforce, wife had minimal work experience, few financial resources, and relied on husband's income during the marriage.

- In early 2024, wife was employed as an assistant director at a nonprofit, earning $5,416 per month but had quit at the time of the permanent orders hearing.

- Wife was voluntarily unemployed and could earn $5,416 per month.

- Husband's suggestion that wife could immediately work at a director level for a nonprofit was unpersuasive because she only recently became an assistant director after many years as a homemaker and had been employed for just the past couple of years.

- Regarding the property division, husband received $570,561 and wife received $524,249.

- Husband was also allocated his ownership stake in Newdea, contributing to his "significantly more financial resources." And wife's testimony about husband receiving a substantial inheritance from his parents was relevant.

- Wife did not have potential income from her marital property award.

- Husband lived alone, had no dependents needing financial support, and had the ability to meet his reasonable needs while paying maintenance.

- Husband was sixty years old and cannot be expected to work into his late sixties or early seventies to pay maintenance but considering all relevant factors and findings, the term should be twelve years.

- Maintenance payments were neither deductible for the payor nor taxable to the recipient for federal income tax purposes.

Contrary to husband's argument, the court did consider his fluctuating income over the last three years, his evidence about wife's qualifications and earning capacity, wife's award of marital property plus whether it could produce any income, and his age and expected retirement.

¶ 32     Nor are we persuaded by husband's assertion that the district court did not make findings as to the "reasonable financial need as established during the marriage." *See* § 14-10-114(3)(a)(I)(D). The court found that the parties built a comfortable standard of living during the marriage. It explained that they lived in a 5,000 square

foot, million-dollar home in an "affluent neighborhood." The court also found that wife relied on husband to meet her reasonable financial needs throughout the marriage. We understand this to mean that the reasonable need included the financial resources necessary to live in a large property in an affluent neighborhood and that wife was unable to meet that need without husband's assistance. *Cf. In re Marriage of Thornhill*, 232 P.3d 782, 789 (Colo. 2010) ("[T]he parties' standard of living during marriage is in fact an appropriate — and even a necessary — starting point for the [district] court's determination of a particular spouse's reasonable needs or whether a spouse would be able to support herself through appropriate employment."); *In re Marriage of Huff*, 834 P.2d 244, 252 (Colo. 1992) ("A review of the financial information in the record and the parties' standard of living at the time of the decree supports this finding [that wife lacks sufficient property to provide for her reasonable needs] and provides no basis to overturn the district court's ruling."). To the extent husband contends that the district court was required to assign a precise figure to the reasonable financial need, he does not cite (and we haven't found) any authority supporting that proposition. Because the district court

made some findings regarding reasonable need and because we can discern its reasoning from those findings, we decline to disturb its maintenance award on this ground. *See Gibbs*, ¶ 9 (A court must make "sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order.").

¶ 33 Husband insists that the district court clearly erred by finding that wife secured "her first job in twenty-five years" when she began working at the nonprofit because her testimony indicated that she had returned to part-time work in 2012. But when reading the entire permanent orders in context, we interpret the court's finding to mean that wife obtained her first full-time job in a long time. In any event, wife's work history was only one factor among many that the court considered in determining maintenance.

¶ 34 And to the extent that husband asks us to reweigh the evidence or the statutory factors in his favor and substitute our judgment for that of the district court, we decline the invitation. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (When reviewing for an abuse of discretion, even where "there is evidence in the record that could have supported a different conclusion, we will not

substitute our judgment for that of the district court."); *Thorburn*, ¶ 49.

## IV. Attorney Fees

¶ 35    Last, husband contends that the district court erred by denying his request for attorney fees under section 13-17-102, C.R.S. 2025. We conclude that additional findings are necessary.

¶ 36    We review a district court's award of attorney fees for an abuse of discretion. *In re Parental Responsibilities Concerning D.P.G.*, 2020 COA 115, ¶ 32

¶ 37    A district court may assess reasonable attorney fees against a party when it finds that the party brought an action that lacked substantial justification. § 13-17-101.5(1), C.R.S. 2025.

¶ 38    A civil action lacks substantial justification when it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(6). A claim is frivolous if the proponent has no rational argument to support it based on evidence or the law. *D.P.G.*, ¶ 33. A claim is groundless if it is unsupported by any credible evidence. *In re Marriage of Oberg*, 900 P.2d 1267, 1272 (Colo. App. 1994). And a claim is substantially vexatious if it is "brought or maintained in bad faith to annoy or harass another." *In*

*re Parental Responsibilities Concerning I.M.*, 2013 COA 107, ¶ 29. "[V]exatiousness includes conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of the truth." *Id.*

¶ 39    Here, husband asserted that wife should pay at least half of the $91,437 in attorney fees he incurred as a result of wife's substantially frivolous, vexatious, and groundless litigation during the dissolution proceedings.  The district court summarily denied the request, stating only that each party would be responsible for their own attorney fees.[2]  True, a court denying a request for attorney fees need not specifically set forth its analysis.  *See Munoz v. Measner*, 247 P.3d 1031, 1034 (Colo. 2011).  But the court's brief and general finding doesn't provide us with a basis on which to conduct appellate review of husband's assertion.  *See Weston v. T & T, LLC*, 271 P.3d 552, 561 (Colo. App. 2011) (district court must make sufficient findings supporting its attorney fee decision to allow

---

[2] Husband asked for attorney fees under both sections 13-17-202, C.R.S. 2025, and 13-17-102, C.R.S. 2025.  The court declined to award him any attorney fees.  In its ruling, the court stated that section 13-17-102 did not apply in dissolution cases.  Read in context, however, the court clearly misspoke and meant section 13-17-202.  Husband doesn't challenge on appeal the propriety of the court's denial of fees under section 13-17-202.

16

meaningful appellate review).  We therefore reverse this portion of the judgment and remand for better findings.  *See In re Marriage of Aldrich*, 945 P.2d 1370, 1379 (Colo. 1997) (reversing where the [district] court's findings "d[id] not permit meaningful appellate review").

## V.  Appellate Attorney Fees and Costs

¶ 40  Given our disposition, we deny wife's request for appellate attorney fees under section 13-17-102 and C.A.R. 39.1.

¶ 41  Wife also asks for her attorney fees under section 14-10-119, C.R.S. 2025.  *See In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006) (section 14-10-119 empowers the court to equitably apportion costs and attorney fees between the parties based on their relative ability to pay).  As the district court is best situated to determine the factual issues regarding the parties' current financial resources, we direct the court on remand to decide whether to award wife her reasonable appellate attorney fees under section 14-10-119.  *See In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

¶ 42  Wife seeks her appellate costs.  Because we affirm in part and reverse in part, we remand to the district court to determine appellate costs.  *See* C.A.R. 39(a)(4) ("[I]f a judgment is affirmed in

part, reversed in part, modified, or vacated, costs are taxed only as ordered by the [district] court.").

## VI. Disposition

¶ 43 The district court's permanent orders are reversed as to the denial of husband's request for attorney fees under section 13-17-102. The court on remand must make further findings explaining the basis for its denial. The permanent orders are otherwise affirmed.

¶ 44 The district court on remand should also consider wife's requests for appellate attorney fees under section 14-10-119 and costs under C.A.R. 39.

JUDGE J. JONES and JUDGE MEIRINK concur.